## No. 9882.

### THE WHITNEY IRON WORKS COMPANY VS. GEORGE B. REUSS.

When manufacturers oblige themselves to furnish machinery to a planter of first-class material and workmanship and free from damaging defects, and guarantee the work for one year, and that same shall be first erected in their shops, as far as practicable, in order that the planter, or his engineer, may inspect the same before their delivery on board of steamboat at the port of New Orleans, for shipment to him, and on due notification he makes the inspection, and thereafter receives and uses said machinery, the burden of proof is on defendant to establish the following facts, viz:

1st.   That the workmanship and material were not of first-class ; but, on the contrary, same were affected with damaging defects ;

2d.   To reconcile his apparent, and implied acceptance of the mill and machinery, resulting from his use of same in bearing off his crops, with his, claim that some were in many essential particulars defective, both as to workmanship, and material ;

3d.   To establish by clear, and satisfactory evidence that the mill and machinery had received "*fair usage*" at his hands, otherwise he cannot defeat his contract to pay the price.

4th.   Holding under such a contract a large and valuable property, the defendant not having established the *conditions precedent*, is not entitled to delay proceedings for the purpose of having heard the evidence of his witnesses as to the *quantum* of damages.

5th.   A judgment taxing cost is an interlocutory decree, though rendered after the judgment in the cause, and separately signed ; but same cannot be revised or reviewed in case the evidence in support of it has not been reduced to writing, and is not in the record.

A PPEAL from the Twenty-second District Court, Parish of Ascension. *Duffel*, J.

*David N. Barrow*, for Plaintiff and Appellee.

*E. N. Pugh* and *R. N. Sims*, for Defendant and Appellant.

The opinion of the Court was delivered by

WATKINS, J. This suit was brought to enforce specific compliance with the terms of a contract of sale, made to the defendant of certain machinery for the manufacture of sugar and molasses.

The same consisted of a five-roll mill and an engine, with all the necessary gearing, fixtures and appurtenances to make it complete and fit it for manufacturing operations, and all of which are carefully detailed in the written specifications, which were submitted to the defendant and accepted by him on the 8th of May, 1884, with some slight modifications.

After enumerating with great particularity the length and diameter of the rolls; the thickness of the shells; the material and diameter of the shafts and journals; the fashion and pattern of the flanges; the character and composition of the bed-plates, cane knife, king-bolts, and juice-pans, among others, the specifications set out the following *special* covenants on the part of the corporation, viz:

1. That all material and workmanship shall be of first-class, and free from damaging defects.

2. That the work is guaranteed for one year under fair usage.

3. That the liability of the corporation is limited to repairing any defective, or broken parts, in the shortest possible time.

4. That the defendant is fully guaranteed against any infringement of patents.

5. That plaintiff will " erect all of said machinery in their shops, as far as practicable " in order that defendant, or his engineer, may inspect the same before shipment.

6. That said company will furnish a full set of blue-print drawings for the mill and its foundations.

7. That it will deliver all the machinery f. o. b. of steamboat in this city, and have same ready for shipment on, or before the 1st of September, 1884.

The price stipulated was $15,750, payable in four equal installments, for which the defendant consented to execute his promissory

notes, payable respectively on the 20th of December, 1884, and February, April and June, 1885, and indorsed by John Reus.

The defendant agreed to furnish two of those notes when the machinery was ready for shipment, and the other two on the 1st of October, 1884.

The plaintiff company avers that the mill, engine and all the machinery were completed according to contract, and delivered in good order on a steamboat in the city of New Orleans for shipment; and that same were received by the defendant, and shipped to his Germania plantation, and erected in his sugar-house.

That, in conformity with the contract, the company previously erected said machinery, in its shops, and that it was there examined and inspected by John Reus and J. C. Lear, engineer, for the defendant; and same were by him accepted.

The company avers full compliance with all the stipulations of the contract, and that it is entitled to have and receive said notes from the defendant, who has failed to comply with his part of same, and has refused to furnish or deliver said notes, notwithstanding he has been repeatedly requested so to do; and prays judgment compelling defendant to comply therewith, and furnish said notes, and for a money-judgment against him for such part of same as shall become due during the pendency of this suit, with recognition of vendor's lien on the property.

The company also demands $794 as the value of extra work, and the restitution of certain tools and implements loaned to the defendant, or their alternate value.

The defendant pleads the general issue, and admits the execution of the contract; but denies that plaintiff has carried it out, on his part, in good faith. He avers further, that the company has done no act thereunder which entitles it to a specific performance, or the payment of the price.

He further avers that many parts of said machinery were constructed of defective material; that the workmanship was bad and rough; that scarely any piece of machinery would fit after being transferred to the sugar-house; and that, after being therein erected, said machinery, as a whole, in the defectiveness of material and workmanship, " stood and stands as a reproach and disgrace to the prevailing improved methods and facilities for the construction of plantation machinery."

He denies that he, or any person for him, ever accepted any part of said machinery in plaintiff's shops in New Orleans, as alleged.

He avers that he discovered the defectiveness of portions of said

machinery after same had been shipped, and promptly notified the plaintiff company and made complaint.

The answer there specifies, among others, the following defects in the mill and machinery, to wit:

1.   That the blue-print drawings for the foundations were incorrectly made, and caused him a loss, in material and extra work, over $400.

2.   That during the grinding season the bed-plate of the three-roll mill was broken, owing to the insufficiency of the foundation bolts and washers.

3.   That both of the shafts of the two-roll mill became loose.

4.   That the intermediate carrier failed to deliver the bagasse.

5.   That five of the cogs in the cast-iron pinion—which the contract required should be of steel—were broken on account of the defectiveness of the material.

6.   The juice-pan of the three-roll mill was made too short and narrow, in consequence of which the cane-juice ran over, and beyond the edge of the pan, and over the journals, and much of it was lost or wasted.

7.   That the patent cut-off, or joy-valve, that was attached to the engine so that the steam could be cut off at any point of the stroke, would not work; nor would the reversing-lever operate well.

Defendant also avers that after much loss of time and great expense for labor he was compelled, in order to prevent the total loss of his crop of 1884, to employ and use said machinery to bear it off.

That through the fault and negligence of plaintiffs in the non-performance of its part of said contract, in the particulars specified, he has suffered damages to the extent of $10,000 for the year 1884, and a like sum for 1885.

That plaintiff's full and complete compliance with the terms of the contract was, and is, a condition precedent to his recovery of him; and that he refused to deliver to plaintiffs his notes on the ground that the machinery furnished was greatly defective, both as respects material and workmanship.

He prays judgment rejecting all of plaintiff's demands at his cost and for judgment in his favor on his reconventional demand.

The pleadings are quite elaborate and difficult of satisfactory analysis, but we have endeavored to furnish a fair and concise synopsis of the demands and counter-claims of the parties to this intricate and abstruse litigation.

It is apparent from the foregoing statement that the three important questions for determination are :

1.   Was the workmanship and material of first class, and free from damaging defects ?

2.   Did the mill and machinery receive fair usage at the defendant's hands while same was in process of erection in his sugar-house, and while it was in his possession and being operated by him ?

3.   Did plaintiff company furnish a full set of blue-print drawings for the mill and foundations, as stipulated in the contract ?

### I.

The burden of proof is upon the defendant to establish that the workmanship and material were not first-class, but were affected with damaging defects; because the opportunity had been afforded him of inspecting the machinery in the company's shops before shipment.

Having accepted delivery of the goods, and shipped them to his plantation and erected them in his sugar-house, and used the same in bearing off the crops of 1884, 1885 and 1886, it became defendant's duty to reconcile his apparent and implied acceptance of the mill and machinery, resulting therefrom.

Defendant must also show affirmatively that the mill and machinery received fair usage at his hands while in course of erection and subsequent operation.

While the defendant, in his answer, does not formally demand the annulment of the contract, in whole or in part, on account of the vices and defects enumerated, it is in effect the action *quanti minoris,* set up by way of a reconventional demand.

### II.

On the trial all of the various issues presented by the pleadings were traversed by the testimony of various witnesses—experts and non-experts—with the exception of defendant's reconventional demand, proof of which was resisted by the plaintiff company in the court below, and successfully, as the defendants' numerous bills of exception will show.

In this court his council urgently press them upon our attention and ask us to review them and reverse the rulings of the judge *a quo.*

They are to the effect that he tendered various witnesses by whom to prove, among others the following items of damage, viz :

1.   Damages suffered by him during the grinding season of 1884, "on account of the bad condition of the machinery furnished by plaintiffs."

Iron Works Company vs. Reuss.

2. The loss and damage caused by, and which was the direct result of "the damaging defects in the machinery made by the plaintiffs."

3. The damages and injury sustained by reason of defective plans furnished by plaintiffs for the erection of the foundations of the mill and engine; and the defective construction of said foundation, and in cost of labor and material.

4. The cost of removing defective parts of said machinery out of the sugar-house; the transportation to New Orleans; and of replacing the same, including engineer's labor, cost of other labor, handling freight to and from New Orleans—said defective parts embracing the two-roll mill, the broken bed-plate, the intermediate carrier, patent joy-valve, etc.

5. The cost of repairs incurred by him during the year 1885, and aggregating about $1500.

6. To prove "all and singular the allegations in this answer relating to the loss sustained in 1884."

The Court refused to admit this mass of evidence upon the ground that under the reservation in the contract, viz:

" We will guarantee our work for one year, under fair usage, limiting our liability to replacing any defective or broken parts, in the shortest possible time."

The plaintiff company can, *under no circumstances*, be held for anything beyond the cost of replacing the broken parts of the machinery made by them; and that any damage resulting from defectiveness of material or workmanship must be borne by the defendant.

But, in the present condition of the case, it is manifestly to the interest of all parties that we should first look into the record, and examine the testimony, and determine whether the defendant has established, by a clear preponderance of evidence, that the workmanship and material of the mill and engine were *not* of first class, but were affected by damaging defects; and that the mill and machinery had received fair usage at his hands while in the .course of erection and subsequent operation.

We shall therefore postpone consideration of the judge's rulings until that is done.

### III.

The district judge tried the case, and heard and knew the witnesses —or very many of them—and the section of the State in which he presides is one in which the cultivation and manufacture of sugar and molasses is a prominent industry, and it may be presumed that he is

quite familiar with the subjects dealt with in this case; therefore, great weight must be attached to his opinion.

He says: "Planters and carpenters, overseers and bricklayers, *so-called* engineers, have all had their say.

"They noticed the frequent stoppages of the mill; they saw the broken plate and loose roller-shafts, the overflow of juice and the dropping cane—but few of them could explain or give the scientific causes for the effects they saw; because, not being competent experts but being non-professionals, and having made no serious study of engineering, or mechanism, used in sugar-houses, they could advance naught but their own crude opinions.

"Over this mass of evidence (700 pages) we have gone several times; have carefully condensed it; grouped it, and analyzed it; have spared no pains in the study of the case—and we have had ample time to study it."

He then found the following substantial facts established:

That the plaintiff company did replace all defective or broken parts of the machinery within the shortest possible delay; said broken parts having been sent to their domicile in New Orleans by the defendant, from time to time, when said breakages occurred; and that plaintiffs' employees were repeatedly sent to defendant's Germania plantation to aid him in the erection of the machinery.

He says: "Plaintiffs' witnesses, Scott, Cummings, Wilbreth, Pearson, Duncan, Flowers, Ormsby, Vannot, McMahon, Taylor, *et als.*, *all experts*, who have, many of them, aided in the construction of several sugar mills, *all agree* in saying that the material and workmanship of defendant's mill are (of) *first class* and *free from damaging defects*; that it is a most powerful one; and that extra expense and labor were lavished in its build in order to make it a model engine; and, in fact, these witnesses say, and so do Tilton and Pandelly, that this machinery is well finished and *perfect*.

"These witnesses minutely explained how the roller-shafts were fitted; the tonnage of pressure used in doing so—which they all agree in saying were sufficient to make a good and tight fit.

"They showed the working of the engine in all of its parts; and of the automatic joy-valve; the pressure of the gearings, or bearings; the setting and use of the scrapers; the proper angle, or stand of the carrier and the causes which, in their opinion, loosened the shaft, and broke the bed-plate."

He says that even if equal weight were given to the testimony of defendant's *non*-professional witnesses, "the evidence of plaintiffs

would largely preponderate over it, and of the additional testimony of Dupuy, Ricker, Lear and Smith."

He then proceeds to particularize the different witnesses of defendant, and give their statements in detail.

He says that James C. Lear, Sr., and Smith, by reason of their long training and experience in the direction and running of sugar mills, are justly entitled to be considered as expert witnesses.

It was the former who put up the mill and engine. In speaking of of the evidence, he states: "The loose shaft was discovered two or three weeks after Lear, Sr., had turned over the machinery to an engineer who had *never before conducted* a five-roller mill, and whose assistant, Dugas, was *a carpenter, not an engineer.*

"A serious doubt is raised here whether, in such unskillful hands, this ponderous machinery received *fair usage.*

"Lear, Sr., says, a shaft should not be loose, except by *accident.* The question there is, was it loosened by accident, or by improper filling at the foundry? It was proven that the shaft was fitted with a 240-tons hydraulic pressure, and that, *one fitted thus, should not get loose,* except by *unfair usage,* or *by accident* of some sort."

He says that Smet and other witnesses testified "that if bagasse be permitted to accumulate on the rollers, in the manner that other witnesses say it did, then it would act upon the rollers with a pressure that would be straining and injurious, and this was *not fair usage.*

He states that Smith says that the scrapers were adjusted on the *plantation by the engineer, who set the angle to suit himself,* and that they did not do their work well.

That "the breaking of the plate might have resulted from the *driving of a key,* by *choking of the mill,* or a *certain jar,* while handling the mill."

There is *no* witness who states at what time, or in what way this break occurred.

The judge says that the proof shows that the pinion proved to have been of *iron* instead of *steel,* as stipulated in the specifications; but that does not disclose any bad faith on the part of the company; that they had themselves been deceived; and *no serious* injury had resulted to defendants therefrom. He held the company bound *to* substitute a *steel* pinion in place of the one of iron.

After an apparently most careful and, to our thinking, impartial consideration of the testimony, the synopsis of which is given, the judge concluded, by saying:

"Defendant has failed to prove damaging defects. Those trifling

ones, incidental to all machinery, and which could easily have been remedied on the plantation, and were not, could not give rise to, or justify the *extraordinary* demand of the defendant."

Again : "Defendant has jotted down every break, every leak, every vibration of his machinery, and has allowed his imagination to run away with his better judgment, and magnify his ills.

" Plaintiffs have proved *most conclusively* that their whole machinery except the *iron pinions*, was first-class in workmanship and material.

" In rebuttal, defendant has only raised slight doubts of defectiveness of parts of machinery which were, after full investigation, set aside."

He thereupon rendered judgment against the defendant for $15,750 with 8 per cent. interest, pursuant to the terms and installments of the contract ; but he provided in the decree that the execution of it should be stayed until the plaintiff company should replace the iron pinions with steel ones.

The decree recognizes and enforces plaintiff's vendor's lien and privilege on the mill, and all the machinery, engine, etc., and directs that same be seized and sold to pay and satisfy the demands of the plaintiff by preference, with all costs.

He also gave judgment against the defendant for some further small amounts, in pursuance of the petition, and of their correctness, there seems to be no well-grounded complaint.

We have been at the pains to read the record, and closely scrutinize the testimony of the witnesses, and have reached the same conclusion the district judge arrived at.

We are of the opinion that the workmanship and material, by the plaintiff company employed in the construction of the mill and engine, with the exception stated above and reserved, was " of first-class, and free from damaging defects ;" and we are not satisfied that the mill and machinery received fair usage at the hands of the defendant, during time of the erection thereof in the sugar-house, nor during the course of its subsequent operation, and the bearing off of defendant's crops of 1884, 1885 and 1886.

We are, therefore, dispensed from deciding the exceedingly delicate and difficult questions that are presented in defendant's numerous bills of exceptions, and by us referred to in the preceding paragraph of this opinion.

While it is perfectly true, as a general proposition, that the court will not control parties as to the order in which they shall introduce evidence, yet, in the instant case, we felt bound, for the manifest pur ·

poses of justice, to decide the other questions in the case, which appeared to us to be decisive of the controversy ; and our examination has fully satisfied us of the correctness of that view.

## IV.

The defendant made application for a new trial, on various grounds, which in their general character address themselves to the sound discretion of the judge *a quo*. One of them was that he was not permitted to introduce proof of the *quantum* of damages; but it has already been disposed of. But defendant is certainly entitled to $76 00 for the "loss of brick, sand and cement."

The lower judge correctly refused a continuance for the purpose of giving the defendant an opportunity to procure the testimony of additional witnesses residing in the parish, and not theretofore summoned by him. He does not allege that their testimony has just come to his knowledge.

We do not think the district judge exercised his discretion improperly.

## V.

The plaintiff and appellee filed a motion to dismiss defendant's appeal, because of certain suggested defects and imperfections in the make-up of the transcript, but which we did not notice, for the reason that a satisfactory transcript was subsequently furnished by the appellant.

He also sought to dismiss a separate and supplemental appeal, from a judgment taxing costs in behalf of certain expert witnesses, because the amount of that particular decree is not sufficient to give this court jurisdiction. We do not regard the one drawn in question as a final judgment, but as an *interlocutory decree*, forming a part of the final judgment rendered in the case.

The law requires that "the costs of the clerk, sheriff, witnesses' fees, cost of taking depositions, and copies of acts used on the trial, and *all other costs allowed by the court, shall be taxed as cost.*" R. S., sec. 750.

We can examine the question raised as forming an integral part of the controversy.

The defendant makes the point that alleged expert witnesses were never regularly summoned or appointed by the court; but that they *voluntarily* appeared as ordinary witnesses and gave their testimony. But the record is barren of evidence on the subject. Possibly it was

not reduced to writing. That was their privilege. We would, under this state of facts. be unwarranted in disturbing the decree.

We are of opinion that the judgment of the court *a qua* is correct, except in one particular—the defendant is certainly entitled to credit for the sum of $76 00.

It is, therefore, ordered and decreed, that the judgment appealed from be amended and reduced by the sum of $76 00, and that as thus amended it be affirmed with cost of appeal taxed against plaintiff and appellee.

## DISSENTING OPINION.

POCHÉ, J. From the preponderance of the evidence it appears to my mind that plaintiffs have not complied with the stipulations of the contract with the defendant, and that they are therefore not entitled to recover the full amount of their claim.

The record shows, in my opinion, that the greater part of the accidents and breakages which have occurred to the machinery which they furnished to defendant must be attributed to damaging defects in said machinery, mainly inferior materials, weak and light metals used in the construction thereof.

It is conceded by the learned judge of the district court that plaintiffs failed to comply with an important stipulation in the contract, which called for steel pinions, in place of which they furnished cast-iron pinions, thus causing a serious breakage in that part of the machinery and entailing grievous injury on the defendant.

It is also shown that owing to the insufficient chains for the cane-carrier, furnished by plaintiff, defendant has been compelled to furnish chains of his own from his old mill in order to be able to use that carrier, which is an important factor in a sugar mill, to which it is the sole and exclusive feeder.

Defendant's contention as to the insufficient size of the juice-pans is not even controverted by the plaintiffs and the judgment makes no provision for that defect, which is certainly a very damaging short-coming, since it exposes defendant to constant loss of cane-juice, which is the very substance of sugar making.

The preponderance of the evidence also shows that the looseness of the shaft of one of the rollers of the two-roller mill must be attributed to defective workmanship and to the use of too light and too weak material in its construction.

The effort made by plaintiffs to prove unfair usage and unskilful handling of that particular part of the machinery is not a success. It

consists in the main of expert testimony of mechanics who express the opinion that the accident is due to the agglomeration of bagasse around the rollers, which hardens by accumulation and friction, thus loosening the shell of the roller from its shaft. But none of these witnesses ever spent as much as a day at that sugar-house while the mill was in operation, and their opinion cannot destroy the positive testimony of defendant's overseer, of his two engineers, who state in detail the means employed in running the mill, the attention given to those two rollers, and who state that a man was stationed there charged with the special duty of scraping the bagasse off the rollers and of thus preventing the very cause to which the expert witnesses trace the accident; and besides, the record contains the testimony of other and equally competent expert witnesses who state that the cause referred to would not result in the loosening of the roller from the shaft, but that such an obstruction would break the coupling or the cog-wheels; and to my mind that opinion carries more weight, as it rests on practical experience.

Now it appears, from defendant's motion for a new trial and from affidavits filed in support thereof, that since the trial had begun below a very important part of the machinery gave way, and that thereby the mill has become unfit for use without repairs, and on this vital fact defendant rested his application for a new trial, during the course of which he offered to show by the testimony of experts that this and other accidents and breakages in that machinery were the result of damaging defects in the material used and in the construction thereof.

In my opinion it was error to refuse that new trial, and under the effect of that ruling this court is deprived of indispensable testimony bearing on the crucial point in the controversy. The motion for a new trial was supported by the affidavit of a scientific machinist who had made an examination of the machinery with a view to detect the proximate cause of this last breakage, and who is entirely disinterested in the cause.

For those reasons, and for others too numerous to mention in this opinion, I think that the judgment appealed from should have been reversed and that the cause should have been remanded for another trial, with a view to ascertain and determine the pecuniary extent of defective machinery furnished by plaintiffs under their contract, so as to deduct the same from the contract price. 9 Ann. 273, Goodloe vs. Brooks.

I therefore dissent from the opinion and decree of the majority.

Mr. Justice Todd concurs in this opinion.