No. 2011
Second Circuit Appeal

STANDARD MOTORS FINANCE COMPANY, INC., v. YELLOW BAYOU GIN AND PLANTING CO., INC., ET AL.
MAYER BROTHERS, WARRANTORS

(January 12, 1925, Opinion and Decree)
(February 20, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Chattel Mortgages—Par. 7.

In a suit on notes for part payment of a farm tractor in which the plaintiff is the purchaser of the notes before maturity, defendant is the maker, and the seller is the endorser, the plaintiff can recover against the maker even though the seller acted as agent of plaintiff in signing the chattel mortgage.

2. Louisiana Digest—Bills and Notes—Par. 130.

In a suit on notes for part payment of a farm tractor in which the plaintiff is the bona fide purchaser of the notes before maturity, defendant is the maker, and the seller is the endorser, the plaintiff can recover against the maker, even though the tractor proves to be so defective that it is wholly unsuited for the purposes for which it was bought.

3. Louisiana Digest—Mandate—Par. 96, 97.

Knowing of the agent is knowledge of the principal, but where agent did not have knowledge of defects of tractor sold when it was delivered, no knowledge of defects could be imputed to the principal.

4. Louisiana Digest—Mandate—Par. 22.

An authorization by a finance corporation to a dealer in tractors to sign the chattel mortgage and act as its agent limits his authority to this sole function.

(Civil Code, Art. 2997. Editor's note.)

5. Louisiana Digest—Appeal—Par. 588.

The judgment of the trial court as to the warrantor who did not appeal can not be changed by the appellate court.

6. Louisiana Digest—Appeal—Par. 587, 683.

A judgment cannot be reversed or amended as between appellees.

7. Louisiana Digest—Sales—Par. 1, 6.

Where it is stipulated in the contract between the manufacturer of farm tractors and the dealer that the dealer is in no way the representative or agent of the manufacturer, the transaction between dealer and manufacturer must be considered, in view of the evidence, as sales from manufacturer to dealer.

8. Louisiana Digest—Sales—Par. 119.

Where a planting company ordered a farm tractor from a dealer for future delivery and subject to inspection and test, the farm tractor was the property of the dealer until the inspection and test was completed.

9. Louisiana Digest—Sales—Par. 214, 218.

In view of Art. 2520 of the Civil Code, a farm tractor which proves to be totally unfit for the purposes for which it was bought and utterly failed to come up to the representations made by the dealer who sold it; contains redhibitory vices which allow the avoidance of the sale by the buyer on that account.

10. Louisiana Digest—Sales—Par. 214, 218, 227, 228.

In view of Art. 2520 of the Civil Code, where the vital defect to a farm tractor was not known or discoverable on simple inspection but was not discovered, notwithstanding many inspections and efforts until long after the buyer accepted the machine, the sale can be avoided by the buyer for redhibitory vices.

ON APPLICATION FOR REHEARING.

11. Louisiana Digest—Appeal—Par. 424.

Where the minutes of the district court fail to show that a default has been taken, the court of appeal is without authority to act on an affidavit to that effect and render judgment against defendant warrantor.

12. Louisiana Digest—Corporations—Par. 212, 303.

A foreign corporation cannot be forced to come into the courts of Louisiana by an ordinary citation served at the domicile of the Illinois office by an Illinois officer.

Appeal from the Fourteenth District Court, Parish of Avoyelles. Hon. S. Allen Bordelon, Judge.

This is a suit brought by the purchaser of chattel mortgage notes against the Yellow Bayou Gin & Planting Co., maker, and Mayer Brothers dealers, endorsers. The defense of the maker was lack of consideration due to redhibitory vices in a farm tractor sold to the maker by the endorser. There was judgment in the lower court for plaintiff against the defendant Yellow Bayou Gin & Planting Company, purchaser of the tractor and Mayer Bros., and its component partners, sellers of the tractor in solido. Defendant, Yellow Bayou Gin & Planting Company, appealed. Judgment amended and affirmed as between plaintiff and the Yellow Bayou Gin & Planting Company but reversed as between the Yellow Bayou Gin & Planting Company and Mayer Brothers, giving defendant Yellow Bayou Gin & Planting Company judgment against the dealers Mayer Brothers, and their component members in solido.

Samuel Moreau, of Marksville, attorney for plaintiff, appellee.

W. E. Couvillon, of Marksville, attorney for defendant, appellant.

CARVER, J. The plaintiff sues Yellow Bayou Gin and Planting Co., Inc., as the maker, and Mayer Brothers and the two individual members composing that firm as endorsers, of two promissory notes secured by chattel mortgage on a tractor.

The Planting Company denied liability on the alleged ground that the notes were given not for money borrowed but in connection with the purchase of the tractor from Mayer Brothers and as representing the credit portion of the price; that the tractor was so defective as to be useless; that the chattel mortgage was passed before one of the Mayers as a notary public and accepted by the other one as agent of the plaintiff; that the notes must be regarded as ordinary vendor's lien notes, void for failure of consideration not only as to Mayer Brothers but also as to plaintiff, because through its agent, R. E. Mayer, it acted jointly with Mayer Brothers in the sale of the tractor and with full knowledge of the nature of the transaction. It calls Mayer Brothers in warranty.

As a defense to plaintiff's demand, Mayer Brothers allege that their endorsement was made as an accommodation to plaintiff and that therefore they incurred no liability to plaintiff but only to subsequent holders.

As a defense to the Planting Company's call in warranty they plead that they did not sell the tractor to the Planting Company for their own account but only as agents of the Gulf Farm Tractor Co. of New Orleans to the knowledge of the Planting Company.

They further plead that the tractor was accepted and pronounced satisfactory by the Planting Company after test, and though not charging specifically they inferentially charge and argue that the tractor was subjected to improper usage by the plaintiff company.

Alleging in the alternative that the tractor was inherently defective, they call in warranty the Gulf Farm Tractor Co., and also the Bates Machine and Tractor Company, the manufacturers of the tractor. Service seems not to have been made on the latter company.

The Gulf Farm Tractor Company filed a plea to the jurisdiction. We find no disposition of this plea in the record; but none of the parties complain of this in this court.

The lower court rendered judgment in favor of plaintiff against the Planting Company, Mayer Brothers and its component partners in solido.

The Planting Company appealed. The

other defendants did not appeal, but have filed in this court an answer to rejoinder in the Planting Company's appeal in which they say:

"That the judgment of the lower court herein should be changed or modified as follows: Plaintiff's claim should be rejected in full and no defendants held liable, on the ground that the tractor sold and mortgaged was inherently defective and such a fact was impliedly known to plaintiff."

1. We think the Planting Company liable to plaintiff on the notes.

The loan for which they were given was made in plaintiff's usual way. Being in the business of financing the purchase of automobiles and sometimes tractors, but no dealers therein, plaintiff supplies dealers with blank forms, consisting of notes, chattel mortgages and so called "Purchaser's Statements." This latter is an application beginning thus:

"To Standard Motors Finance Co., Inc.,
    "New Orleans, U. S. A.
"For the purpose of securing a loan from you in order that I may purchase one tractor I make the following representations:"

Then follow blank spaces for details as to applicant's address, value of his property, income, expenses, debts, and other data designed to give plaintiff such information as will enable it to determine as to the advisability of the loan applied for.

The dealer is given authority to sign the chattel mortgage as plaintiff's agent, probably because the chattel mortgage law requires the mortgagee to sign the act, but his authority is limited to this sole function.

After being executed these instruments are forwarded to the home office of plaintiff in New Orleans and submitted to its executive committee which decided whether to make the loan applied for or not.

In this case the instruments were executed on May 22, 1920, and forwarded to the plaintiff, which approved the loan on May 31, 1920, and credited the proceeds on its accounts against Mayer Brothers.

The chattel mortgage was passed before one of the Mayers as notary and was signed by the other as agent of the plaintiff.

Before finally approving the loan the plaintiff demanded the endorsement of the Planting Company's officers, but instead of endeavoring to get such endorsement the Mayers gave their own, which plaintiff accepted.

In support of its defense against plaintiff the Planting Company does not cite a single authority but relies on two reasons, viz: That one of the Mayers acted as agent of plaintiff in signing the mortgage and that the loan was an integral part of the purchase and, in effect, made the plaintiff joint vendor with Mayer Brothers.

Neither reason seems to us good.

The testimony of Troyer is uncontradicted to the effect that Mayers' authority was restricted to signing the mortgage; the approval of the loan being reserved by plaintiff to itself; and this fact must be presumed to have been known by the Planting Company from the initial words of the Purchaser's Statement above quoted, which was signed contemporaneously with the notes and mortgage.

The application is not to buy a tractor on terms of credit but to secure a loan for the purpose of buying one. If the manager of the Planting Company had supposed that the transaction with plaintiff was closed by his signing the notes and mortgage there would have been no reason to sign the application.

We think the relation between plaintiff and the Planting Company that of lender and borrower and in no sense that of vendor and vendee. To hold that the plaintiff in making the loan to buy the tractor was

the vendor of the tractor would be a reversal of the legal situation unwarranted by the facts or the law. The situation is not altered by the fact that the Planting Company did not itself get the money. In effect it requested plaintiff to pay it to Mayer Brothers, which was virtually done by crediting it to their account.

Even if the authority of Mayer Brothers as the agent of plaintiff had not been restricted as above mentioned, we do not think the Planting Company could escape liability on the ground that the knowledge of the agent respecting defects in the machine should be imputed to the plaintiff.

Many decisions are cited in support of the proposition that knowledge of the agent is knowledge of the principal. We fully admit the soundness of this legal principle, but it affords no ground of relief to the Planting Company because at the time of the loan the Mayers did not know of the fatal vice, namely, the defect in the oiling system, which vice had not then been discovered. The knowledge Mayer acquired after plaintiff had parted with value could not be imputed to it.

This view of the relation between the Planting Company and the plaintiff makes it unnecessary to resort to the principles governing negotiable instruments.

2. The plaintiff's judgment against the Mayers cannot be disturbed because they did not appeal. Their answer to the Planting Company's appeal cannot avail for that purpose, it being well settled that as between appellees there can be no change. See Lee vs. Powell Bros. et al., 122 La. 639, 48 South. 134, in which a long line of authorities is cited on the proposition that a judgment cannot be reversed or amended between appellees.

3. We think the judgment erroneous on the Planting Company's call in warranty. The evidence satisfies us that in selling the tractor Mayer Brothers acted on their own account and not as agents.

They ordered it from the Gulf Tractor Company, which shipped it to its own order with bill of lading attached to sight draft on them.

The Planting Company was unable, of course, to get the machine from the carrier, and Mayer Brothers did so after getting the terms of the shipment modified to the extent of having their acceptance taken instead of cash.

While it is true they ordered the machine for the Planting Company, yet their purchase of it and their sale of it were separate transactions made at different times for different prices and on different terms.

Mayer Brothers produced a contract between themselves and Gulf Farm Tractor Company of date December 2, 1919. The first clause of this contract grants to Mayer Brothers the right to sell tractors. The second clause binds Mayer Brothers to arrange for the sale of them to users at list prices plus freight. In the third clause Gulf Farm Tractor Company agrees to sell the tractors to Mayer Brothers' "terms"; sight draft with bill of lading attached (with collection charges) f. o. b. factory, Joliet, Ill., hereinbefore described and more especially described in the manufacturer's 1919 literature at the net prices indicated in the following table:

Clause 9 is as follows:

"It is hereby agreed and understood by and between the parties hereto that the second party is in no way the representative or agent of the first party and has no right to assume or grant any obligations of any kind, express or implied, on their behalf or that will bind them in any way whatsoever."

Clause 15 provides that the agreement shall continue in force and govern all transactions between the parties thereto until August 15, 1920; the right being re-

served to either party, though, to cancel the agreement on written notice.

Mr. G. L. Mayer testifies that at the time the tractor was sold to the Planting Company this contract was null and void, but he vouchsafes no explanation as to how it became so; nor does he produce any other contract or give the terms of such other contract, if any.

The tractor was shipped in strict accordance with the contract produced, and if that contract was null and void, as Mr. Mayer testifies, then whatever new one was made must be presumed, in the absence of proof to the contrary, to have been substantially similar to the contract produced in respect of the particular question with which we are dealing, namely: whether the contract constituted Mayer Brothers the agents of Gulf Farm Tractor Company or merely its dealers in accordance with the general custom of the automotive trade as well as according to the terms of the contract produced.

Mr. Collins, manager of the Planting Company, testifies that he dealt with the Mayers personally and not as agents and did not know from whom they were going to get the tractor.

It is not denied that the Planting Company ordered the tractor subject to inspection and test. Its title, therefore, vested only after inspection and test had been made, but that of Mayer Brothers had vested before that. If the machine had been destroyed on the way to the Planting Company's mill or, perhaps, even in the hands of the carrier, the loss would have been that of Mayer Brothers.

The testimony also satisfies us that the tractor was totally unfit for the purpose for which it was bought; that it utterly failed to come up to the representations made by Mayer Brothers; and that it was of no benefit or service to the Planting Company. Indeed, its inherent defectiveness is judicially alleged by Mayer Brothers themselves, as shown by their pleading in this court above quoted.

These judicial admissions might have dispensed with the necessity of examining the testimony respecting the condition of the tractor. We have, however, examined this testimony carefully and are convinced by it that the defect falls squarely within the definition of redhibition as given in the Civil Code, 2520, which reads as follows:

"2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice."

When the tractor arrived at the Planting Company's station Mayer Brothers undertook to take it out of the car but could not do so. Believing this was due to trouble with the magneto, they procured a new one, with the aid of which they got the tractor out of the car and ran it to the Planting Company's mill. Trouble developed on the way, thought to be due to the governor. After some demonstration and Mayer's assurance that the magneto and governor trouble which had developed were minor defects, the Planting Company accepted the tractor, gave a check for the cash part of the price and signed security papers looking to borrowing the rest from the plaintiff.

On the next day further demonstrations were made by Mayer's agent, Couvillon, during which the carburetor caught fire twice. Efforts to use the machine thereafter made by the Planting Company and its employees were unsuccessful.

Mr. Collins testifies that if the supply of oil was abundant enough to splash the tractor would go; but when the oil supply got too low to splash the tractor would

heat and would have to be stopped until it cooled off. So great was the heat that it melted the bearings.

Complaints were made to Mayer Brothers who would send their expert mechanics to correct the trouble. The cause of the trouble was supposed to be different things, but after each effort the machine would still fail to work properly. Finally the real, or at least main, cause was found by Rufus Taylor to be the failure to install in the machine the check valve of the oiling. system, consisting of a steel ball held in place by a pin, the function of which was to prevent the oil from returning to the oil reservoir, permitting it to go into the trough where the piston rod would catch and throw it up to the cylinder bore or piston. Finally all parties seem to have abandoned further effort to put the machine in order.

Mr. Collins testifies that the tractor never made but seven or eight trips, four of which were made by or under supervision of Mr. Couvillon; Mayer Brothers' mechanic.

He further says that although the machine had been represented as capable of doing much more work than a mule team, it did not do one-fourth as much.

Mayer Brothers do not deny his statement as to the representations made and seem to have recognized their obligation as vendors and warrantors by their numerous efforts to put the machine in order, and also by their letter of June 28, 1920, in which they say:

"We want you to know that we expect to stay with you on this sale and see you through. And we regret very much what has happened, and we want you to know that the fault was not ours."

Counsel for Mayer Brothers cite several authorities on the principle that known defects or those discoverable by simple in-spection do not afford ground for redhibition.

These authorities, though, are without application for the reason that the vital defect in this case was not known or discoverable on simple inspection, but, on the contrary, was not discovered, notwithstanding many inspections and efforts, until long after the Planting Company accepted the machine.

Counsel for Mayer Brothers also cite the following cases, namely:

Whitney vs. Reuss, 40 La. Ann. 112, 3 South. 500.

Dreyfous vs. Lourd, 111 La. 21, 35 South. 369.

Advance-Thresher Co. vs. Roger, 123 La. 1068, 49 South. 709.

Edwards & Kirk vs. Plaquemine, etc., Co., 46 La. Ann. 360, 15 South. 61.

McLain vs. His Creditors, 47 La. Ann. 139, 16 South. 764.

On examination of these cases we find the facts in all of them very different from those in the case at bar.

In the Whitney case, the warranty was only as follows:

1. That all material and workmanship shall be first-class.

2. That the work is guaranteed for one year under fair usage.

3. That the liability of the vendor is limited to repairing any defective or broken parts in the shortest possible time.

The defendant had used the machinery to take off three crops of sugar.

The court found that the only defect in the machinery was that certain pinions which should have been of steel were of iron; that no serious injury had resulted to defendant therefrom; and that it was not satisfied that the mill and machinery had received fair usage at defendant's hands during its erection or its operation during the crop seasons of three years.

Furthermore, the contract provided that the machinery was to be erected, as far as practicable, in the vendor's shop that defendant might inspect same before delivery to the carrier and that it was so inspected by defendant's engineer.

In the Dreyfous case the court found that the machinery was of the kind and quality called for by the contract. That it failed to do the desired work was due either to the insufficiency of the power of the engine and unsuitability of the gearing for transmitting the power from the engine to the pumps, or else to the insufficiency of the water supply in the wells. But that plaintiff was not responsible for the trouble, whichever was the case; having furnished articles of the kind and quality called for by this contract his warranty went no further.

In the Thresher case, the plaintiff's agent made a contract with defendant to furnish and deliver certain machinery on terms and conditions contained in a printed order submitted to defendant and signed by him. This printed order contained limitations on the right of the agent to depart in any way from its terms. The defendant and plaintiff's agent also signed another contract which was not submitted to plaintiff and which materially altered the terms of the contract sent. The altered terms were beyond the authority of the agent to make, which fact was known to the defendant because so advised by the printed order signed by him.

In the Edwards case, the court did not believe in the existence of the defect alleged by defendant who had used the machine a considerable time, making payments thereon from time to time.

The 47th Annual case was evidently cited by inadvertence, the question there involved being one of vendor's privilege

It is thus seen that the facts of this case differ from those of the cited cases which are at all pertinent, in that in those cases the defects were regarded by the court as rather silent; whereas in this case it was such as to render the tractor entirely useless, and also in that in those cases the defects were not within the terms of the warranty, whereas in this the defect is. The lower court erred in giving interest from July 2nd, 1920, on both notes. It should have been from July 22nd, 1920, on one, and August 22nd, 1920, on the other.

It is decreed:

1. That the judgment of the lower court as between plaintiff and the Yellow Bayou Gin and Planting Company, Inc., be amended by allowing interest only from July 22nd, 1920, on half the debt, and from August 22nd, 1920, on the other half, and as thus amended it be affirmed.

2. That as between the plaintiff and Mayer Brothers and the individual members of that firm the judgment of the lower court remain undisturbed.

3. That as between Yellow Bayou Gin and Planting Company, Inc., and Mayer Brothers and the individual members thereof, the judgment of the lower court be reversed, and that said Yellow Bayou Gin and Planting Company, Inc., have and recover judgment against Mayer Brothers, George L. Mayer and Reyam Mayer, in solido, for the amount of the judgment rendered in plaintiff's favor against said Planting Company, to-wit: the sum of fourteen hundred and fifty-three and 32-100 dollars, together with interest thereon at the rate of eight per cent per annum from July 22nd, 1920, until paid, on half the debt, and like interest from August 22nd, 1920, till paid on the other half, and

twenty-five per cent addition on said principal and interest for attorney's fees and costs of both courts.

4. That the right of said Planting Company to recover from said Mayer Brothers and the component members thereof the cash part of the purchase price of the tractor, together with interest thereon, be, reserved.

That as between plaintiff and the Planting Company the costs of appeal be taxed against plaintiff.

———

## ON APPLICATION FOR REHEARING

Mayer Brothers ask for a rehearing herein and that they be given judgment on their call in warranty against Gulf Farm Tractor Company, Inc., and against the Bates Machine and Tractor Company of Joliet, Illinois.

The minutes of the District Court fail to show that a default was taken against Gulf Farm Tractor Company, Inc., and hence this court is without authority to render judgment against it.

If the minutes of the District Court were incorrect, they might be remanded to the lower court for correction; but they cannot be corrected so as to show that a default was taken against the party sought to be called in warranty by mere affidavit.

The Bates Machine and Tractor Company is a foreign corporation and cannot be forced to come into the courts of Louisiana by an ordinary citation served at the domicile of the Illinois office by an Illinois officer.

This court, therefore, is without authority to grant the relief sought and made the basis of the application for rehearing.

Rehearing refused.