## S. B. BEVANS & Co. *v.* JOHN M. FARRELL.

The renunciation of warranty, made by the buyer, is not obligatory, where there has been fraud on the part of the seller.

The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and the repayment of the expenses, is answerable to the buyer in damages.

A vendor is bound to good faith, and must state any defect he knows in the thing sold. The exception is when the article is susceptible of convenient examination, the purchaser is bound to make that examination, and abide by it.

APPEAL from the Sixth District Court of New Orleans, *Howell*, J. *Durant & Hornor*, for plaintiff. *Buchanan & Gilmore*, for defendant· and appellant.

LABAUVE, J. The present action was instituted by the plaintiffs to·· recover from the defendant the price of two hundred barrels of potatoes, which, at the time of the sale, was on board of the barque Gan Eden, lying at the port of New Orleans.

The potatoes were to be taken by the purchaser, *rotten* or *sound*, as the· case might be.

Assuming that the sale of the commodity was made with a renunciation of warranty, the question for consideration is whether that renunciation is obligatory on the buyer ; if it is not, it is because there has been fraud on the part of the seller. (See Article 2526, La. Code.)

Article 2523 La. Code, declares "the seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and the repayment of the expenses, is answerable to the buyer in damages."

It is not, however, necessary, to charge the seller with fraud, that his knowledge of the defect of the thing sold by him should be certain; it suffices that he had good reason to suppose that the vice existed, and he omits to communicate the suspicion of that fact to the purchaser.

This principle is clearly enunciated by Pothier in his Traité du Contrat de Vente, Part. 2, Chap. 1, Art. 213, § 2.

"Le vendeur, quoiqu'il n'ait pas eu connaissance formelle du vice de la chose vendue, est, à cet égard, réputé comme s'il l'avait eue, lorsque,.

ayant un légitime motif de soupçonner ce vice, il n'en a rien dit à l'ache-
teur, car cette réticence est un dol."

Now, applying this principle to the facts disclosed by the testimony in
this case, we cannot sustain the judgment rendered by the Court below,
which was in favor of the plaintiffs.

Cephas Read, the master of the barque, examined as a witness, on the
trial of the case, says :

"Mr. Bevans was introduced to the witness on the levee, opposite
where the barque was lying, and asked him about the condition of his
potatoes. He told the witness that he had an offer of so much per barrel
for all the potatoes that would be landed. The witness informed Bevans
that he did not expect to be allowed to land any of those potatoes, in
consequence of their being rotten. Mr. Bevans did not go on board the
vessel at that time, and left immediately after this conversation. This
witness then gives his reasons for telling Mr. Bevans that his potatoes
were rotten (but which reason he did not communicate to Mr. Bevans),
and this reason was the very strong and offensive smell of decayed vege-
table matter, which proceeded from the cargo, when the hatches were
opened.

He further says that the potatoes were found to be completely rotten,
and by order of the wharfinger were thrown into the river from the deck
of the vessel, and that the wharfinger would not suffer them to be
landed.

Mills S. Western, the first mate of the barque, fully corroborates the
testimony of the master; and there is nothing in the cross-examination of
either of these witnesses which, in any manner, militates against their
corroborating statement in their examinations-in-chief.

There can be no doubt that the information derived by Bevans, from
the master of the barque, must have caused him to suspect the existence
of the vice in the commodity sold by his firm to the defendant, and
honesty and fair dealing required that he should have communicated the
suspicion to the purchaser. By the suppression of this information, and
indeed by asserting that he wanted Farrell to make money out of the
potatoes, the seller took an unfair advantage over the other contracting
party; and the law deems every such attempt a fraud in transactions be-
tween man and man.

In the case of *Szymanski* v. *Urquhart*, 5. A. 491: "The general rule,
says the Court, is that a vendor is bound to good faith, and must state
any defect he knows in the thing sold. The exception is when the article
is susceptible of convenient examination, the purchaser is bound to
make that examination, and abide by it." But it is proved by the
two witnesses above named, that, at the time of the sale, the potatoes
were in the lower hold of the vessel, and that the seller, himself,
could not see even one barrel of them. Their state of decay was
ascertained by the officers of the ship, from the strong and offensive

·odor, as of decayed vegetation proceeding from the part of the vessel where the potatoes were stowed.

It is therefore ordered, adjudged and decreed, that the judgment of the lower Court be annulled, avoided and reversed.

It is further ordered, adjudged and decreed, that judgment be and it is hereby rendered in favor of the defendant, John M. Farrell, and against the plaintiffs, S. B. Bevans & Co.; and it is further ordered that the plaintiffs pay the costs in both Courts.

HOWELL. J., recused.