LAND, J.
 

 The defendant, a feme sole of the age of majority, is sued by plaintiff corporation for a balance of $2,500, alleged to be due on an original subscription of 400 shares of stock of the Guerin Theater Seating System, Inc., at the price of $12.50 a share.
 

 Plaintiff alleges that defendant paid $2,-500 cash on said stock on November 8, 1921, the date of the alleged subscription, and agreed to pay the balance in 90 days after December 1, 1921.
 

 Defendant avers in her answer that the alleged stock subscription was obtained from her by M. J. Guerin, Jr., president of plaintiff corporation, and by other representatives of said corporation, by fraud and by misrepresentation of material facts.
 

 ' Defendant represents that she paid the sum of $2,500 on the original stock subscription, without having any knowledge at the time of the fraud being practiced upon her and of the falsity of the representations made to her.
 

 The four certificates, issued to defendant for the 200 shares of stock paid for by her, were tendered to plaintiff corporation .at the time the answer was filed, and were deposited in the registry of the court, and defendant has demanded, in her answer, judgment in re-convention against plaintiff for the price of the stock already received.
 

 Defendant prays that the demand of plaintiff be rejected, and that she recover on her reconventional demand judgment against plaintiff in the sum of $2,500, the price of the stock for which she has paid, with legal interest thereon from November 8, 1921.
 

 Judgment was rendered in the civil district court in favor of the plaintiff, the Guerin Theater Seating System, Inc., in the full amount sued for, with legal interest, and defendant has appealed.
 

 1. In our opinion, the judgment appealed from is erroneous.
 

 ■ The Guerin Theater Seating System, Inc., is a Delaware corporation organized by J. Morinville Guerin, Jr., and his son, Wilfred Guerin, and authorized to do business in this state. The Guerins are not related to defendant, although bearing the same name.
 

 Defendant is an inexperienced woman in business matters, and inherited some means from an uncle.
 

 The evidence shows that defendant was solicited repeatedly by the Guerins, their sales manager, and salesman to make the purchase of the 400 shares of stock involved in this suit, and that the sale of the stock was effected only after considerable effort upon their part.
 

 During the negotiations leading up to the stock subscription, Wilfred Guerin stated to defendant that he was the inventor of a new patent for locating vacant seats in a darkened auditorium. This statement was not true. While negotiations were-pending for the sale of the stock, defendant was presented also with a fraudulent advertisement published in the New Orleans daily papers, announcing that
 
 the Guerin system ivas in operation
 
 in a million dollar moving picture theater in Los Angeles, and that its manager considered that
 
 the Guerin system
 
 had proved to be
 
 a great financial sueeess.
 

 
 *429
 
 The advertisement in question reads as follows:
 

 “Don’t Read This!
 

 “The Talk of Los Angeles!!!
 

 “Guerin Theater Seating System is Now Operating in the New Million Dollar Theater of Los Angeles.
 

 “The oioner says it is increasing his receipts by $150 to $250 per
 
 day! These wonderful systems will
 
 make
 
 and
 
 earn
 
 thousands yearly for theaters, yet cost them practically nothing.
 

 “Vacant Seat Indicator in Grauman’s Million Dollar Theater, Los Angeles, California.
 

 “Only 5 out of Every 100 Theaters Would Make Every Investment of $100.00. Now Worth $4,000.00.
 

 “An Investment Opportunity Equaling All the Great Possibilities of Oil.
 

 “Yet with None of Its Risks Whatever, but Practically Now Equal to a ‘Producing Well.’
 

 “Gall at our offices in the New Hibernia, Suite 90S, or fill in blank below and mail now for particulars.
 

 “Stock Salesmen and Salesladies Wanted!
 

 “Guerin Theater Seating System, Inc., Vacant Seat Indicating Systems for Theaters, Suite 903, New Hibernia Bldg., New Orleans, Louisiana.
 

 “Gentlemen: Kindly send: me full particulars of the stock you have to offer. This places me under no obligation whatever.
 

 “Name: -.
 

 “Address: -.
 

 “Guerin Theater Seating System, Incorporated.
 

 “903 New Hibernia Bldg. New Orleans.”
 

 The Guerins also issued a circular containing, in part, the following statements:
 

 “The direct management of the company rests in the president
 
 and his son,
 
 who is vice president and
 
 secretary
 
 — the
 
 inventor of the system.
 
 * * *
 

 “The system is the invention of a Louisianian
 
 and is backed by the Louisiana people, placing it in a peculiarly strong position from the standpoint of administration.
 

 “We have secured authority for the sale of our stock from the Louisiana Securities Commission so that the legality of the system is assured to our stockholders.”
 

 The evidence of M. J. Guerin, Jr., taken on the return of the subpoena duces tecum on June 27, 1923, shows conclusively that the Guerin Theater Seating System, Inc., was not in business at that date, that no installations of the Guerin vacant seat indicator had been made in the Grauman Million Dollar Theater, in Los Angeles, or elsewhere, hut that plaintiff corporation was still in a state of promotion.
 

 As a matter of fact, the Hansen patent, obtained June 6, .1916, an invention with an indicator board in the lobby by which vacant seats can be located in a darkened theater, was in operation in the Grauman Theater, at Los Angeles, at the date of the fraudulent advertisement herein referred to, and the truth is that neither the Guerin Theater Seating-System, Inc., nor Wilfred Guerin had any interest whatever in the Hansen patent.
 

 At the date of the institution of this suit, March 28, 1922, the Guerin Theater Seating System, Inc., owned the Johnson patent, dated February 26, 1918, and issued 1 year, 8 months, and 20 days after the patent of Hansen, the original inventor of the basic idea of seat indicators in the lobby of a theater.
 

 In addition to this, Wilfred Guerin had filed two applications for patents which had not been granted, and which related merely to improvements in theater seating devices and were quite identical with the basic idea of the original Hansen patent, and with the later Johnson patent, which itself was only an improvement upon the original Hansen patent.
 

 The Hansen patent provides for an indicator in the lobby of a theater, equipped with electric lights, which indicates the row in which vacant seats are located, but not the particular seat or seats vacant in the row.
 

 In order to locate a particular vacant seat, it is necessary to advance down the aisle to the row indicated on the Hansen indicator in the lobby, and to examine the electric lights in a housing on the back of the aisle seat in the row, as the lights on in the housing indicate the particular seat or seats vacant in that particular row.
 

 
 *431
 
 The -Johnson patent calls for an indicator board in the lobby representing in miniature the seating plan of the theater. This board contains a perforation for each seat, with a shutter within each perforation. The particular seat and row are indicated on the back of each of these shutters. When the seat is vacant, the shutter is closed over its im-ticular 'opening in the indicator board in the lobby, and when the seat is occupied the shutter is raised or lifted up on the board.
 

 The patents applied for by Wilfred Guerin, but not issued, merely call for electric lights in the place of the shutters in the Johnson patent indicator board.
 

 Under this state of facts, it was deliberate imposition upon the general public to advertise in the newspapers or in circulars any claim that the Hansen patent, then operated in the Grauman’s Million Dollar Theater, in Los Angeles, the center of the picture show industry, was the installation of the great Guerin seating system.
 

 It was especially an act of bad faith on the part of the promoters of plaintiff corporation as far as local subscribers to stock áre concerned, for them to have announced by pamphlet that “the legality of the system is assured to our stockholders” by the Louisiana Securities Commission, when the permit to sell stock of date June 4, 1921, obtained by the Guerin Theater Seating System, Inc., expressly declares:
 

 “The laws complied with in regard to this security ; but this is not to be interpreted as recommending the purchase of this or any security by the Securities Commission.”
 

 The Louisiana Securities Commission did not, by any means, pass upon and approve the validity of any patent claimed by plaintiff corporation. The' question as to the patent rights of plaintiff conflicting with the Hansen patent was not an issue raised before that body.
 

 The Attorney General, in acting on the application of' plaintiff corporation to sell its stock, said:
 

 “In re application of Guerin Seating Co. No. 158. I do not think it would be fair to investors in this company to permit the sale of its stock at the premium sought, for the reason that the value of the patent rights upon which this premium is based is altogether conjectural and uncertain, and I agree with Mr. Thomas that the sale of the stock at $12.50 would allow sufficient surplus to cover the commission for the sale of stock by the agent and other legitimate incidental expenses, and do hereby concur in the conclusions reached by Mr. Thomas.”
 

 Hon. L. E. Thomas, examiner of state banks, had declined to grant plaintiff corporation the right to sell its stock at $20 per-share, as applied for, and recommended the sale of the stock at $12.50, with the following statement:
 

 “I doubt the wisdom of permitting this stock to be sold at any price above par, for the reason that the corporation is just starting, its whole future is dependent upon the success of the patent seating device, which may or may not be a money making proposition for the stockholders. .The corporation is yet in its formative stage.”
 

 If the public had been given the true facts as to what the Louisiana Securities Commission had said about the value of the stock of plaintiff corporation, it would have been a drug on the market.
 

 It is not possible, by the most vivid stretch of the imagination, to construe the statements made by the Louisiana Securities Commission, either as a recommendation to the public to purchase this stock, or as an assurance of “the legality of the system” in the sense that pláintiff corporation held the original basic patent for the seating system advertised by it in newspapers and in pamphlets in the city of New Orleans.
 

 The excuse offered by the promoters of plaintiff corporation that the original Hansen patent was an infringement on the later Johnson patent covering the same basic, idea, with slight improvements, and that they were therefore justified in using the advertisement
 
 *433
 
 and circular in this case does not impress us as being a good or valid reason for their conduct. The public and stock subscribers should have been advised, at the time, of the actual facts of the situation.
 

 It is well settled that:
 

 “Those who issue a prospectus holding out to the public the great advantages that will accrue to persons who will take shares in a proposed undertaking, and inviting them to take shares bn the representations therein contained, are bound to state everything with scrupulous accuracy, and not only abstain from stating as facts that which is not so, but to omit no one fact within their knowledge the existence of which might affect the nature, extent, or quality of the privileges and advantages that the prospectus holds out as inducements to take shares.” 7 R. G. L. “Corporations,” § 212, p. 240.
 

 It is stated by Fletcher in his work on Private Corporations, § 612, p. 1350, that:
 

 “In determining whether a fraud has been committed in procuring a subscription to stock, the same principles are to be applied as in the case of other contracts.
 

 “It may be laid down as a general rule, therefore, that any false representation of a material fact, made by a person for whose representations the corporation is responsible, with knowledge that it is false, or recklessly and without any knowledge as to its truth or falsity, if relied upon by a person to whom it is made in subscribing for shares, is such fraud as entitles him to rescind his subscription, or maintain an action for damages.”
 

 ' See, also, Revised Civil Code, art. 1847.
 

 That the Guerins were aware that the statements made in the advertisement were false is proved by the fact that they well knew that the Guerin seat indicator system had not been installed in the Los Angeles theater. They had never visited Los Angel-es; they had never seen Grauman’s Theater there; they did not know the manager of this theater, nor had he communicated to them what he -thought about the Hansen patent. The Guerins themselves advised the defendant that there was only one system, or one patent, and that was the Guerins’.
 

 The advertisement was shown the defendant by J. Morinville Guerin, Jr., and his sales manager. She knew nothing at the time about the Johnson patent or the Hansen patent, but learned the true facts long after her subscription to the stock in this case. The advertisement showing the wonderful success of the Guerin system in Los Angeles looked ‘‘good” to her, she invested in the system, as explained to her, and which she thought “good,” and naturally expected to make money out of it.
 

 There was, in fact and in truth, no Guerin patent, and no Guerin system founded upon any Guerin patent then in existence. Defendant was duped into purchasing this stock upon an advertisement relating to the Hansen patent and the Hansen system then being operated successfully in Los Angeles.
 

 As the misrepresentations of the promoters of plaintiff corporation were made as to material facts, affecting the value of the stock sold to defendant, the contract of subscription was obtained from her through artifice, and with design to cause loss to her, and by which she was influenced in making such contract, which must be annulled as fraudulent, and the reconventional demand of defendant must be maintained.
 

 It is therefore ordered that the judgment appealed from be set aside and reversed. It is now ordered that there be judgment in favor of defendant, on her reconventional démand, against the plaintiff, the Guerin Theater Seating System, Inc., in the sum Of $2,500, with legal interest thereon from November 8, 1921, until paid.
 

 It is further ordered that the contract of stock subscription sued upon in this case be rescinded and set aside, that plaintiff’s demand be rejected, and that plaintiff’s suit be 'dismissed, at its costs.