No. 387

First Circuit

**J. A. FAY & EGAN CO., INC., v. LAFAYETTE LUMBER CO., INC.**

(January 9, 1929.  Opinion and Decree.)

Mouton and DeBaillon, of Lafayette, attorneys for plaintiff, appellant.

Voorhies and Labbe, of Lafayette, attorneys for defendant, appellee.

ELLIOTT, J. J. A. Fay & Egan Co., Inc., claims of Lafayette Lumber Company, Inc., the amount of three notes representing the balance of the purchase price of a moulding machine, amounting in the aggregate to $900.00, with interest and attorney's fees.

Lafayette Lumber Co., Inc., resists payment and claims back from plaintiff by way of reconvention, the sum of $450.00 paid on the machine, $224.21 as freight, $71.23 for belting and $153.83 expended in constructing a foundation for the machine delivered, which defendant claims will not serve for a machine of any other make or size.

The facts show that J. A. Fay & Egan Co., Inc., acting on an order addressed to it by defendant, at its New Orleans sales office, dated June 26, 1923, sold and delivered to defendant a moulding machine, described in the contract as: "One rebuilt American 12″ inside molder, will work up to 12″ wide and 6″ in thickness; four large feed rolls driven, all heads; four side and slotted, each fitted with a pair of knives, with three speeds of feed and counter shaft." This machine to be thoroughly tested and painted; to be guaranteed against faulty materials and workmanship, and to have been thoroughly rebuilt. Plaintiff's manager and sales agent in New Orleans wrote the contract and sent it to the defendant for its signature. The price was $1350.00 of which $450.00 was paid in cash, and the balance by the three notes sued on.

The machine was shipped from plaintiff's home plant at Cincinnati, Ohio, to defendant at Lafayette, Louisiana. The plaintiff, in shipping, drew on defendant a sight draft for $450.00, the cash part of the purchase price, and $73.84 in addition for belting, and attached the draft for $523.84,

also three notes sued on to be signed, to the bill of lading, thus compelling a payment of $523.84 in cash, also $224.41 in freight, and the signing of the notes sued on, before defendant could take the machine out of the car. When the machine had been taken out, set up and tested, defendant took the position that it was not the kind nor make contracted for. That the machine contracted for, was an "American" make, of fast speed, from seven to ten years old, which would manufacture both light and heavy moulding. That the machine delivered was a slow feed, of the Houston-American make, from ten to twelve years old, would not make moulding under 1½ inches in width, nor less than 1 inch in thickness, nor do the work contemplated by defendant and which plaintiff guaranteed it would do.

It notified J. A. Fay & Egan Co., Inc., that the machine in question was held subject to its disposal, and that it would not pay the notes in question. The plaintiff instituted suit on the notes.

Defendant set up in its answer that it did not owe the notes, that the machine delivered was not the make nor kind contracted for, and did not have the same qualities, alleged concealment of facts, and set up a demand in reconvention.

The lower court rendered judgment rejecting plaintiff's demand on the notes, and also against the plaintiff in favor of the defendant in reconvention for $784.05.

The plaintiff has appealed, and the defendant answering in this Court, prays that the judgment in its favor in reconvention be increased to $901.85, and in other respects affirmed. The plaintiff on its part alleging that more than one year had elapsed since the alleged concealment and defects were known to defendant, that its demand in reconvention was prescribed and barred by the prescription of one year under the law, Civil Code Arts. 2534, 2546. It accordingly filed in this Court a plea of prescription of one year against defendant's demand in reconvention and urges that it be sustained.

When the trial commenced, plaintiff offered in evidence the contract and notes sued on and closed its case in chief. The defendant then called P. J. Voorhies, its manager, as a witness, showed him the contract used on, and requested him to read it and state whether or not any definite speeds of feed are mentioned. The plaintiff objected on the ground that the contract had been offered in evidence and speaks for itself. The objection was overruled, and the witness answered that there were no definite rates of speed mentioned in the subject matter. He was then asked whether, under the description in the contract, a fast feed machine doing both light and heavy moulding could have been delivered. The plaintiff objected on the ground that the contract speaks for itself, and that the question asked an opinion from the witness which the Court itself should determine. The Court referred the objection to the merits. The defendant introduced under this ruling a considerable amount of testimony, such as letters between the parties, and parol evidence, the purpose of which was to show that the machine which was the object and cause of the contract, was a rebuilt American make of fast speed and capable of making both heavy and light mouldings, which the evidence shows, means large and small mouldings.

The plaintiff contends that these rulings were erroneous, and urges that they be set aside and the evidence disregarded.

The defendant alleges in its answer that the description in the contract is an

uncertain and indefinite description of the property, and merely a general classification under which could fall machines doing different work, and containing nothing therein which would prevent the machine sold from doing the work which the plaintiff company guaranteed said machine to do, etc.

The evidence shows that there are several kinds of moulding machines. Some have fast feed, others have slow feed. Some make only large mouldings, others only light or small mouldings, and still others of fast feed will make both heavy and light mouldings. Such being the case, it follows that the written contract sued on contains a latent ambiguity which consists in the fact that it fails to state whether the machine sold is a fast or slow feed, and also whether it will make both heavy and light mouldings. This bears on the object as well as the cause of the contract.

The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him. C. C. Art. 2474.

Art. 2276 of the Civil Code does not apply in such a situation, to exclude any legal evidence necessary, in order to show the meaning of the contract when it is susceptible of two meanings and the description so general that it may refer to machines that are either fast or slow feed and will make both large and small sized mouldings. Greenleaf, Vol. 1, Sections 297, 298, 299 and 300.

The letters of the parties before and after the contract, and parol evidence were therefore properly admitted in order to show that the machine, which was the object and cause of the contract, was in fact a fast feed that would make both light and heavy mouldings, whereas the machine delivered was of slow feed and would make only large sizes.

The witness was also asked whether there were oral conversations and agreements and correspondence entered into pending the negotiations just prior to the date of this contract. Plaintiff objected, which objections are stated at length. They may be summarized as follows: that the written contract was the law between the parties, such proceedings and negotiations are merged therein. That the written evidence was not admissible beyond what is contained in the contract, or as to what may have been said before or at the time of making it, or since, or to show a condition under the contract different from that expressed in the act consented to before or after it was entered into, etc.

That defendant having admitted in its answer that it is still in possession of the machine, no evidence showing or intending to show character or warranty or that the goods delivered are different from or inferior to those sold is admissible, etc. That the contract provides that the retention of the machine after thirty days from its arrival at its destination constitutes a trial and acceptance and is a conclusive admission of the truth of all representations made by or for the seller, and a fulfillment of all its contracts of warranty expressed or implied.

The Court referred the exception to the merits, and the defendant introduced under this ruling a large amount of evidence in the form of letters, telegrams, conversations over the phone and oral conversations between the parties before and after the contract. The plaintiff urges that the ruling was erroneous, and that it should be set aside and the evidence disregarded.

The object and purpose of the testimony was to show that the machine shipped and

delivered to the defendant was not the make or kind called for by the contract.

The word "fraud" is not expressly used in the answer, but defendant alleges that plaintiff shipped and delivered to it a different make and kind of machine from that contracted for, and inferior to it in quality. That it would not do the work which plaintiff guaranteed the machine contracted for, would do.

The Civil Code Art. 2547, on the subject of vices which the seller has concealed from the purchaser provides:

"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject under the title of Conventional Obligations. It may, according to circumstances give rise to the redhibition or to the reduction of the price and to damages in favor of the defendant."

Therefore, if defendant's charge is true, it amounts to fraud on the part of the plaintiff.

In Bevans vs. Farrell, 18 La. Ann. 232, cited in defendant's brief, the Supreme Court in deciding a case which involved a renunciation of warranty said:

"It is not, however, necessary to charge the seller with fraud, that his knowledge of the defect of the thing sold by him should be certain. It suffices that he had good reason to suppose that the vice existed and he omits to communicate the suspicion of that fact to the purchaser."

The plaintiff is bound to have known the make of the machine that it had rebuilt and the qualities of feed and manufacture. The Court therefore ruled properly.

For such a purpose communications between the parties by letters, telegrams, telephone and oral conversations before or at the time of making the contract or since, are admissible, provided that same tend to establish the charge which the defendant makes in its answer. C. C. Art. 1848.

Plaintiff's manager and salesman in New Orleans, asked about defendant's opportunity to examine the machine before taking it out of the box car and to its plant, stated that defendant could have examined it in the car. The evidence indicates that the machine could not have been properly examined until it was taken out of the car, set up and tested.

Mr. Voorhies, defendant's manager, testified that his contract with the plaintiff called for an "American" make, of fast speed, that would manufacture both light and heavy moulding, that is, both large and small sizes.

We think the actions of the plaintiff and the correspondence tend to support the testimony of Mr. Voorhies on this subject, although denied by the plaintiff.

For the purpose of refuting the defendant's averments that the machine delivered was not the make nor kind that had been contracted for nor would do the work which it was guaranteed to do, the plaintiff took the testimony of Mr. Green, its secretary; Mr. Brunner, its shop foreman and chief mechanic; and Mr. Hotopp, its inspector and demonstrator, in Cincinnati. These three witnesses testify that the machine shipped was a rebuilt American, as stated in the contract. They say that the American company, which is the maker of the machine called for by the contract, combined with a number of other companies engaged in the manufacture of wood-working machinery, and that they did not know which particular member of the American Company had built this par-

678

ticular machine. That the machine had been thoroughly rebuilt and tested at its factory in Cincinnati, before shipping, etc. That it had no serial number, but that their shop number for it was 3772. According to their testimony the machines made at the several factories that entered into the combination were properly designated as American makes. But their testimony on this subject is not in harmony with that of its manager and sales agent in New Orleans who made the sale and wrote the contract. According to the latter, one of the factories which entered into the combination with the American Company was known as the Houston Company. That after the combination, the machines which it had made were known as Houston-Americans. That the machine delivered to defendant was a Houston-American and not an American make, called for by the contract. That there is a difference between it and those properly called the American make. That the Houston-American make was not as modern as the make known as the American.

On account of defendant's complaint about the machine not being the make called for by the contract, and of slow feed and would not make both light and heavy moulding, Mr. Vigo, plaintiff's manager in New Orleans, sent a mechanic to inspect it. This mechanic came to Lafayette and stated that he had come to inspect the machine, that he would get breakfast, and then return and make a test. He was not seen nor heard from any more. Mr. Vigo finally came himself to examine it. According to Mr. Voorhies, he came to defendant's plant, and after making a casual observation he went into the office and after some discussion with him about the matter, he left, saying that he would let him hear further from him regarding the subject, but nothing came of it. Mr. Voorhies says that he then disconnected the machine and put it aside. It is still in defendant's plant.

The defendant contracted for "One rebuilt American molder," and it is our conclusion that there is a material difference between the make stipulated for and the Houston-American make delivered. The inference from the testimony is that the make called for by the contract is the most desirable. We are also of the opinion that the machine contracted for was a fast feed, and would manufacture both light and heavy, that is, both large and small moulding. We are satisfied that the machine delivered is a Houston-American of slow feed, and will not manufacture small sized or light mouldings. That the difference between the machine contracted for and the one delivered is such, that the machine delivered cannot be regarded as a compliance with the contract.

We are satisfied that the machine delivered contained some defects but the fact that the machine is not of the make called for by the contract and is of slow feed and will not make both light and heavy moulding, is the proper ground for avoiding the sale and restoring the parties to their former position. The defendant is entitled to that under Civil Code Art. 2531, even if plaintiff did not know the fact that the machine shipped was not the make and did not have the qualities of the one contracted for. But we think the Civil Code Art. 2545 applies, because plaintiff's manager who made the sale knew the qualities wanted, while the agents who shipped the machine knew it was not the make called for.

The contract contains a stipulation:

"That in case of rejection of the within described machinery, the undersigned shall promptly deliver it in good order to J. A.

Fay & Egan Co. F. O. B. cars, Cincinnati, Ohio. That a retention of the property forwarded, after 30 days from its arrival at destination shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the vendors, and a fulfillment of all its contracts of warranty expressed or implied."

Plaintiff contends that this stipulation is the law between the parties. We do not agree with plaintiff that such is the result in this case. The doors of the courts are always open, except in cases of estoppel, for the purpose of aiding good faith in contracts, C. P. Art. 19, and to prevent fraud, C. C. Arts. 1756, 1819, 1847 and 1848. This stipulation is of ño avail against the law that: "In all cases the dissolution of a contract may be demanded by suit or by exception," C. C. Art. 2047. And all contracts "may be avoided either by exceptions to suits brought on such contracts or by an action brought for that purpose." C. C. Art. 1882. Code of Practice Art. 20.

The plaintiff, citing the case of Szymanski vs. Urquhart, 5 La. Ann. 491, and C. C. Art. 11 to the effect that parties "in all cases in which it is not expressly or impliedly prohibited, * * * can renounce what the law has established in their favor," contends that the defendant has waived all defenses of the kind mentioned. In Szymanski vs. Urquhart, the defects of the sugar mill rollers were apparent upon inspection, and the seller, although he believed them good, did not warrant them, but told the plaintiff to see for himself. The rollers were out in the open and could easily have been examined and were sold for half price. Plaintiff took them at his own risk. In this instance the machine was in a car and defendant could not examine it properly until it had been taken out of the car. Not only that, but before it was taken out, defendant was compelled to pay $523.84, also $224.21 for freight, and sign the ñotes sued on. This brought about rights in defendant which did not exist in the case cited.

The plaintiff also cites Whitney Iron Works vs. Reuss, 40 La. Ann. 112, at page 120, 3 So. 500, 505, in which the Court took occasion to say that the defendant "has jotted down every break, every leak, every vibration of his machinery, and has allowed his imagination to run away with his better judgment, and magnify his ills." We do not think such exists in the present case. The plaintiff contends that its manager and salesman in New Orleans could not, and did not, by agreeing to examine the machine at Lafayette and sending a mechanic and coming himself to do so, waive the stipulated result of retention for thirty days. We think that plaintiff's manager and salesman who made the contract on the part of the plaintiff, stands in the place of the plaintiff, and that his act in sending a mechanic, and in going himself to examine the machine, and when after observing it, he left saying that he would let them hear further from him about the matter, waived the stipulation. But supposing otherwise, the stipulations cannot prevent defendant from availing itself of the right which the law gives, to urge in its defense, whatever it could have alleged as a cause of action.

The situation is comparable to a renunciation of warranty when it has been obtained by fraud on the part of the seller under Art. 2548.

The plaintiff filed in this court, against defendant's demand in reconvention based

on its alleged concealment as to make, quality and vices, the prescription of one year under Art. 2534, 2546. The Article 2534 does not apply because as heretofore stated, the seller had knowledge of the concealment of make and quality and did not declare same to the purchaser. The Article does not apply for the further reason that the seller, not being domiciled in the State, is shown to have remained absent before the expiration of the year following the sale. And even though a year had elapsed, that fact does not prevent a party urging as a defense whatever he may have urged as a cause of action. Code of Practice Art. 20; Civil Code Arts. 1882 and 2047; Thompson vs. Milburn, 1 Mart. (N. S.) 468; Davenport Heirs vs. Fortier, 3 Mart. (N. S.) 698; Gillespie et al. vs. Cammack et al., 3 La. Ann. 251; Ridge vs. Alter, 14 La. Ann. 869; Edwards & Kurz vs. Plaquemine Ice and Cold Storage Co., 46 La. Ann. 360, 15 So. 61.

The prescription filed by plaintiff in this Court is therefore overruled.

The defendant prays that the judgment in reconvention in its favor be increased from $748.05 to $901.88. The amount allowed in the lower court is, we judge, by computation made up of $450.00 paid on the purchase price of the moulding machine delivered, $73.48 for belting, and $224.21 as freight. After considering defendant's demand in this respect, we think the judgment appealed from is correct.

Judgment affirmed, plaintiff and appellant to pay the costs in both courts.