No. 4147

Second Circuit

(Second Division)

ROBY MOTORS CO., INC., v. HARRISON

(February 16, 1932. Opinion and Decree.)
(March 16, 1932. Rehearing Refused.)

Argued before DREW, CULPEPPER and TALIAFERRO, JJ.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for plaintiff, appellant.

Cook & Cook and C. D. Egan, of Shreveport, attorneys for defendant, appellee.

TALIAFERRO, J.   On June 11, 1929, by written act, plaintiff sold to defendant a second-hand, six-cylinder Reo braugham automobile, for the price of $800, of which amount $200 was paid in cash or its equivalent and defendant gave his note for the remainder of the price, secured by chattel mortgage on the car, payable in 15 equal monthly installments. This note was reduced to $293.72 by various payments, the last of which being made in June, 1930. Plaintiff brings this suit to foreclose the mortgage by ordinary process.

Defendant, while admitting the execution of the note and mortgage, challenges the right of plaintiff to enforce same against him. He avers that the purchased car was orally guaranteed to be in first-class mechanical condition, and was guaranteed to remain in that condition for a period of from 30 to 60 days after sale; that he had little knowledge of automobile mechanics and relied upon the guarantee of plaintiff; that within one week after he acquired the car it developed defects and lack of good mechanical condition to such extent that it was necessary to install new pistons therein, which plaintiff did at his insistence, but this effort to remedy the defects proved futile, and the car at no time gave satisfactory service; that before the expiration of the period of guarantee defendant endeavored to get plaintiff to accept return of the car, but this was refused; and he was induced by plaintiff's agents and employees to allow further repairs on the car, they promising to put same in the condition it was supposed to be in when he purchased it; that finally plaintiff put new rings in the pistons, which did not fit, and thereafter, as before, the engine pumped oil, knocked, and in other respects was entirely unsatisfactory; that because of the above mentioned defects in said car, and others named in the answer, defendant is entitled to have the contract of sale of said car to him rescinded; the amounts paid on that account returned to him and the note sued on cancelled and he relieved of liability thereon; and he prays accordingly.

He admits that he continued to make payments on said note held by plaintiff,

while the car was giving him so much trouble, but did so on the repeated promises of plaintiff's agents and employees that the guarantee would be made good and the car placed in satisfactory mechanical condition, which was not done, and for the additional reason he did not wish to be involved in a suit with plaintiff.

Before trial of the case plaintiff entered a remittitur of its demand in excess of $300, exclusive of interest, and defendant did likewise to the amount of $206.28 on his reconventional demand, so that the City Court would have jurisdiction of the case.

The lower court rejected the demand of plaintiff and the reconventional demand of defendant; decreed the sequestered car to belong to plaintiff and cast each side for half the costs. Plaintiff appealed.

Defendant has answered the appeal asking that the judgment of the lower court be affirmed in so far as it rejects plaintiff's demand, and recognizes it the owner of the car, but prays that it be amended by giving him judgment for $300 on his reconventional demand.

A study of the record leaves no doubt in our minds that the car in question when purchased by defendant was in very bad mechanical condition, so much so that defendant would not have purchased it had he been wise to its vices. This is best disclosed from the fact that on June 15th, four days after date of purchase, defendant returned the car to plaintiff's garage and complained of the car's condition, and without question or hesitation, so far as the record shows, plaintiff immediately did extensive and costly repairs to the car, without cost to defendant. The motor knocked, spark plugs leaked oil and the car had not the power needed to go up grade of any kind, save in low gear, and would, at times, stop entirely. The nature of these repairs is given by Mr. Morgan, service manager of plaintiff, as "grinding valves, put in new pistons, fix emergency lever, adjust transmission so it would not slip out of reverse gear, fix gas gauge on dash, make horn blow, fix lights, fix glass channel in left door, fix windshield wiper." This work and the parts furnished amounted to $36.76. This effort did not seem to bring the results desired, and on July 5th and 30th, and on September 10th, additional repairs were made to the car costing $52.19, including labor, which was not charged to defendant. On one of these dates an effort was made to take knock out of the valve assembly. From June 29, 1929, to March 14, 1930, labor on and repairs to the car amounted to $79.47, which was charged to defendant. During this period of some nine months the car was in plaintiff's garage for labor or repairs over eighteen times, and on some occasions remained there for days.

We take it that the repairs made by plaintiff at its expense were necessary for the improvement of the car and were done out of a consciousness of obligation on its part, or else they would not have been made. However, plaintiff's officers say that these were done out of a desire to please and satisfy defendant. It is contended by plaintiff that the car was abused while in defendant's possession, hence its failure to function as expected. This is not established by the evidence. It would scarcely be contended, however, that abuse could have produced the condition of the car's motor as revealed on June 15th, four days after sale to defendant, a condition which plaintiff sought to remedy at its expense, but which effort, the testimony shows, was not successful. If defendant had then delivered the car back to plaintiff and refused to carry out his part of

the sale he would have been within his rights. He was athletic director of the Y. M. C. A. of Shreveport, and desired a car for his and his wife's pleasure as well as for use in connection with the athletic activities of the Y. M. C. A. It is shown that on several trips with the basketball team of the Y. M. C. A. in this car it gave trouble; once a bearing burned out.

On trial of the case the lower court excluded all oral testimony offered by defendant to establish the alleged guarantee on part of plaintiff. Plaintiff admits that its obligation was to deliver the car in good running condition and insists that it was in such condition when delivered. We think the evidence referred to supra negatives this contention.

The exclusion of this evidence has no material bearing on the issues in the case. It is clear warranty was not waived by the parties, and as said in Standard Motor Car Co. v. St. Amant, 18 La. App. 298, 134 So. 279, 280.

"Whether or not he gave any such guaranty the contract carried with it the implied warranty that it was in running condition and 'fit for the purpose intended.'

*   *   *   *   *   *   *

"The term 'fit for the purpose intended' we understand to mean the ordinary general use of an automobile."

While no one should expect the same efficient service from a second-hand car as they would from a new one, still, where one agrees to pay as much as $800 for a six-cylinder car, shown to have been run only 16,000 miles, as in this case, he has the right to expect, at least for many months, reasonably efficient service from it. Crawford v. Abbot Auto Co., 157 La. 59, 101 So. 871; Jackson v. Breard Motor Co., 167 La. 857, 120 So. 478.

Warranty is implied in every sale, unless clearly excluded by the convention of the parties. C. C. art. 1764, par. 2; Crawford v. Abbott Auto. Co., 157 La. 59, 101 So. 871.

With respect to movables, warranty extends to hidden defects of the thing sold or its redhibitory vices. C. C. art. 2476.

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." C. C. art. 2520.

It goes without saying that when a person purchases an automobile he primarily wants a vehicle that will meet his needs for it. A car that will not run, or one which runs intermittently, requiring the attention of a mechanic frequently to keep it going, is an abomination to the owner. In the present case the use of the car was so "inconvenient and imperfect" that it could not be supposed that defendant would have purchased it had he known of its defects or vices.

The recent case of Standard Motor Car Co. v. St. Amant, 18 La. App. 298, 134 So. 279, in many respects is similar to the case at bar. The legal principles therein discussed have peculiar application to this case. In that case the district court, under authority of article 2543, Civ. Code, reduced the price of the car in question, holding that the amount paid was all that defendant should be required to pay. This judgment was affirmed by First Circuit Court of Appeal. However, on rehearing, 18 La. App. 304, 138 So. 461, these judgments were reversed and judgment rendered in favor of plaintiff for the balance due on the purchase price. The court's action on rehearing was largely predicated upon defendant's attitude towards the unpaid notes due on the price when payment

of them was demanded. He wrote plaintiff that on account of bad collections he was unable to meet his obligations. At no time did he complain of the service the car gave him as a reason for not meeting the notes.

In the present case defendant testified that he complained to plaintiff frequently about the car's running condition and repeatedly offered to return it to them, but was refused. His evidence on this point is not denied by plaintiff's officers or employees. He continued to pay his notes for several months rather than invite litigation with plaintiff. We do not think, under the circumstances, he is now estopped or precluded from asserting the redhibitory vices of the car when he purchased it, and which were not remedied by plaintiff, after many attempts.

This car was in defendant's possession thirteen months and during this time he had the use of it and the speedometer shows it had been run over 14,000 miles. This service was worth something to him.

"In a redhibitory suit the judge may decree merely a reduction of the price." C. C. art. 2543; Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590.

We think the amount paid by defendant a sufficient price for the car in question and that he should not be required to pay more.

The lower court decreed plaintiff entitled to retain possession of the car in question, and defendant in answer to the appeal prays that that portion of the judgment be affirmed. But for this request we would reverse that part of the lower court's judgment. However, we can now only affirm it.

For the reasons herein assigned the judgment appealed from is affirmed at cost of plaintiff in both courts.