## ROBY MOTORS CO., Inc., v. PRICE et al.
### No. 5414.

Court of Appeal of Louisiana. Second Circuit.
April 1, 1937.

Wise, Randolph, Rendall & Freyer, of Shreveport, for plaintiff-appellant.

Lee & Lee, of Shreveport, for defendants-appellants.

TALIAFERRO, Judge.

Miss Mildred McCrery, now the wife of Howard Price, purchased from plaintiff a second hand used 1932 model Studebaker Rockne sedan for the price of $405, on which amount $45 was credited, being the value of her equity in a Chevrolet coupé taken over by plaintiff in the trade. She gave her note for the balance of $360, payable in 30 equal semimonthly installments, secured by mortgage on the sedan. After operating the newly acquired car for three months, she sold it to C. E. Turner, who assumed payment of the balance due on the note which he indorsed

in plaintiff's hands. He paid nothing in cash. He had the possession of and operated the car for nine months and turned it back to Mrs. Price for the reason, as alleged and testified to, that it was so defective mechanically that it would not give reasonable service. The sale between them was rescinded. In the meantime, the note had been reduced to $204. Further payments not being made, plaintiff instituted this suit on the note against Mrs. Price and Turner, as indorser. The mortgage is not being foreclosed. The suit is resisted by both defendants. Their defense is that the car was purchased by Mrs. Price on the representation and assurance of Mr. J. W. Roby, plaintiff's president, and its salesmen, that it was in good running and mechanical condition and would give satisfactory service for fifteen months, the period in which the note was to have been paid, which representation and assurance, they allege, were untrue; that said car was afflicted with redhibitory vices, was in bad-repair and seriously defective mechanically; that from the day of its purchase to the time it was sold to Turner and while he owned it, on account of said vices and defects, it gave motor, radiator, ignition, and other troubles incessantly and of such character that it was necessary to take it to garages for repair and mechanical services some forty times; that it was taken to plaintiff's garage for repairs, etc., several times and worked on by its mechanics, but its unsatisfactory condition remained unchanged although assured each time that it had been put in first-class condition. They pray that the sale of the car be annulled for the vices above related, and that they be absolved from liability on the note; and further, in reconvention, for judgment for the aggregate of the amounts paid thereon, plus the value of the Chevrolet coupé traded in on the price.

The demands of both sides were rejected. The court held that the car was worth no more than defendants had paid thereon and, availing itself of the equitable power conferred by article 2543 of the Revised Civil Code, reduced the price to that amount. This judgment, in effect, leaves the parties as they were before suit was filed. Both sides perfected appeals.

Before the car was delivered to Mrs. Price, but after the terms of the sale had been agreed to, she signed in duplicate a formal letter to plaintiff, wherein she authorized it to enter her order for the car and requested its delivery to her. The order is on a printed form provided by the seller. When the form is correctly filled out, it discloses on its upper half the facts and terms of the sale, while on the lower half in smaller type appears the following stipulations, with others not pertinent to this case:

"No salesman's verbal agreement is binding on the company; all terms and conditions of this sale are expressed in this agreement; any promises or understandings not herein specified in writing are hereby expressly waived.

"It is agreed that any Used Car purchased under this order is sold as is. We do not guarantee. All warranty is expressly waived by purchaser. Any adjustments or repairs made from this day on will be charged for. We do not guarantee mileage or model."

It is stated in this order that it is not binding on the seller until approved by one of its officials. It was approved by Mr. Roby. Such a letter or order, it is shown, is invariably exacted by plaintiff of each car purchaser. Mrs. Price alleged and testified that she was ignorant of the substance and purport of these stipulations, did not read them, and would not have signed the paper had she known or been advised of its true meaning and purpose.

Plaintiff relies upon the waiver of warranty contained in this signed order or letter to defeat Mrs. Price's reconventional demand and to bar relief to her from her own indiscretion; and denies that its terms may be traversed by parol testimony.

The record amply supports defendant's contention that the good qualities of the purchased car and its ability to give reasonably satisfactory service for the purpose purchased were grossly misrepresented by plaintiff's agents and officers. Serious mechanical defects and vices revealed themselves immediately after the sale, in fact, the day of sale. While on a short drive in the city that day, the engine became so hot that it ceased to run, and intermittently thereafter, to the extent of being regular, troubles of various kinds arose to annoy and vex the owner. Time and again it was carried to plaintiff's workshop for repairs and work done on it. Workmen at other shops endeavored to remedy the many defects which developed from time to time, but without success. After using the car for a while, it was discovered that the engine block was cracked. The evi-

dence of this very serious injury at the time of sale was hidden by rust. Defendant drove the car only once out of the city of Shreveport and then only on a trip of thirty miles. On this trip it ceased to function, and plaintiff had it pulled back to Shreveport for repairs.

Plaintiff offered no testimony whatsoever to contradict that adduced by defendant in support of the allegations of her answer and reconventional demand. The truth of these allegations is clearly established. The car did not and would not give reasonable service, such as a used or secondhand car of this kind and character would be expected to give. The question arises, Is defendant without relief because of the waiver of warranty?

We think the issues raised in this case may well be adjudicated by application of unambiguous articles of the Civil Code. Articles 2520, 2541, 2542, 2543, 2547, and 2548, prescribing rules for the disposal of cases involving redhibitory demands, are as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."

"The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition."

"The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action."

"But in a redhibitory suit, the judge may decree merely a reduction of the price."

"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of conventional obligations."

"It may, according to circumstances, give rise to the redhibition, or to a reduction of the price, and to damages in favor of the buyer."

"The renunciation of warranty, made by the buyer, is not obligatory, where there has been fraud on the part of the seller."

█ Plaintiff buys and sells new and used cars on a large scale. It doubtless maintains up-to-date, well-equipped shops and garages for the rebuilding and repairing of its own cars and those brought to it by others for repairing, and, for these purposes employs a large force of competent workmen. It is reasonable to assume, as we do, that the mechanical condition of any motor vehicle, new or used, may be determined by its workmen after only a brief examination, and no doubt this is invariably done with respect to used cars acquired by it for resale. This is necessary in order to determine the value of such as a "trade in." Plaintiff does not contend that it was ignorant of the true condition of the car sold Mrs. Price, nor could it well do so. In view of the undisputed facts and circumstances, knowledge of such conditions may be imputed to it, if it had pleaded ignorance thereof.

█ Article 2547, supra, specifically says that, if the seller knowingly declares that the thing sold possesses some quality it does not actually possess, such a declaration is equivalent to fraud and should be judged according to the general rules of the Civil Code applicable thereto. The rule is well expressed in 55 Corpus Juris, 124, § 89, from which we quote:

"As a general rule, if one party makes a positive statement of a material fact concerning the sale being negotiated, it implies a representation of knowledge, and is fraudulent if it is in fact false, particularly where the representation is of a fact peculiarly within the maker's knowledge. For example, if the seller makes false statements of fact for the purpose of inducing a sale, and the buyer rightfully relies and acts upon such representations, it constitutes fraud, without regard to whether the seller knew his statements to be false or acted recklessly in making them without knowledge of their truth or falsity, and without regard to whether the representations were made innocently or fraudulently, particularly where the buyer has not an equal means of knowing the truth." Guerin Theater Seating System v. Guerin, 163 La. 426, 112 So. 34.

And article 2548 declares that the renunciation of warranty *is not binding* where there has been fraud on the seller's part. Therefore, having found that the car was affected with defects of such character that the purchaser would not have bought it had she been aware of their existence and that plaintiff knowingly misrepresented the true qualities of the car prior to the sale, it is obvious that articles 2547 and 2548 have application. The misrepresentations were the equivalent of fraud and have the effect of nullifying the waiver of warranty relied on by plaintiff. In view of these circumstances, parol testimony was admissible to impeach the waiver. Turner & Renshaw v. Wheaton et al., 18 La. 37; Faulk v. Hough et al., 14 La.Ann. 659; S. B. Bevans & Company v. Farrell, 18 La.Ann. 232.

■ Waiver of warranty in the sale of personal property is permitted, but one cannot contract against his own fraud to the extent of relieving himself from liability to those who may become the victims of the fraud. The rule is the same as that relative to contracting against liability arising from negligence. Waiver of warranty was recognized in Fee v. Sentell, 52 La. Ann. 1957, 28 So. 279; Jackson v. Breard Motor Company, 167 La. 857, 858, 120 So. 478; Crawford v. Abbott Automobile Company, 157 La. 59, 101 So. 871.

■ But in those cases, there does not appear to have been injected the element of fraud or willful misrepresentations of a material quality of the thing sold. We take it that, where the seller is in good faith and innocently declares that the thing sold possesses some substantial quality which it does not in fact possess, warranty against recourse for the price or for damages, could be waived, although without such waiver, as stated in article *2529, supra*, a redhibitory action would lie. The same is doubtless true where a thing is sold without any express declaration or representation concerning its special quali-

ties, without which the purchaser would not be supposed to buy.

Plaintiff relies upon Roby Motors Company v. Cade, 158 So. 840, decided by this court. The facts of that case are easily differentiated from those of the instant case. There were no willful misrepresentations made by the seller in that case to induce defendant to purchase the truck involved, and on the question of fact, concerning the truck's running and mechanical condition when sold, we found for plaintiff. In some respects, being then impressed with the immediate facts before us, we stated the principles too broadly; but, as regards the efficacy of the waiver of warranty therein discussed, what we said finds support in the three Supreme Court decisions above cited.

■ Notwithstanding the defective and unsatisfactory mechanical condition of the car, defendants possessed and operated it for twelve months and during this period paid $156 thereon. It would be inequitable, in view of these facts, to say that the status quo ante should be entirely restored. To do so would work an injustice upon the seller. Certainly the use of the car for this period was worth something. The continued use of the thing, after discovery of its defective condition, as a rule, relegates the buyer to an action in quanti minoris. Max Barnette Furniture Company v. Guy, 3 La.App. 239.

■ The facts of this case bring it within the holding of this court in Roby Motors Company v. Harrison, 19 La.App. 659, 139 So. 686, in which we held:

"Where buyer used automobile for thirteen months, court, in redhibitory suit, may reduce price because of car's vices."

The lower court decided that substantial justice would be done by reducing the price of the sale to the amount paid by defendants thereon, and we agree with this disposition of the controversy.

Judgment affirmed; costs of appeal to be paid equally by appellants.