AYRES, Judge.
Plaintiff, as the holder and owner of a promissory note, sought to recover of the defendant maker, judgment for the balance due thereon and for recognition of a vendor’s lien and chattel mortgage on a 1957 Buick station wagon. The note represents the credit portion of the sale price of the car purchased by defendant from Nolen Motor Company.
In answer to plaintiff’s demands, defendant, through a proceeding making the vendor a third-party defendant, sought • the avoidance of the sale because of redhibitory vices in the car which rendered it useless for the purposes for which it was bought, and prayed that, in the event judgment was rendered against him, he should, likewise, have judgment against the third-party defendant.
From a judgment in favor of plaintiff, as prayed for, against defendant, and, from a judgment in the identical amount in favor of defendant against the third-party defendant, the defendant appealed devolutively and the third party suspensively to this court.
Defendant concedes that plaintiff is the owner and holder in due course of the note sued upon; hence, that there is no valid defense as against the plaintiff. The only issue, therefore, on the appeal, relates to the alleged redhibitory defects in the automobile, a matter with which only the defendant, as the purchaser, and the third-party defendant, as the vendor, are concerned.
*36 Of the vices of the thing sold which give occasion for a redhibitory action, LSA-Civil Code Art. 2520 provides:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
Involved are only factual matters. With the aforesaid principle of law in mind, the pertinent and material facts may be briefly reviewed. Defendant immediately, after his purchase, experienced difficulty in the operation of the car. Some of these, however, may he classified as minor and, in some instances, perhaps inconsequential. Such difficulties involved the carburetor or other mechanisim affecting the starting of the car or rendering starting difficult and causing the excessive use of fuel. The battery soon required replacement.
A major mechanical failure developed during the first month of defendant’s possession of the car. This involved a front wheel which was said to be about to fall off. The vendor made the necessary repairs, the parts of which cost $95.00, one-half of which was paid by defendant. Soon thereafter, a second major mechanical failure developed; the drive shaft broke and dropped down. The car stopped on the street and had to be towed by a wrecker to a garage. A mechanic of 33 years’ experience testified that
“The drive shaft had run out of grease and broke and dropped out” at “the rear end.”
In further explanation of the breakdown, the mechanic testified that the universal joint had become loose inside the housing and had cut the housing in two. To make the repairs, it was necessary that the universal-joint and drive-shaft combination be replaced, as well as the housing enclosing the drive shaft. The uni versal-joint and drive-shaft combination was a sealed unit which could not be greased without cutting or drilling a hole through the housing in order to get to the grease cup. No one other than the Buick people knew where to drill the hole, the mechanic testified.
We are impressed by the record that this was a serious mechanical defect from which the same mechanical failure would likely, and in some instances, as disclosed by the record did, actually occur and recur time and again. The defect was such that the defendant could not remedy, and the mechanical failure one which he had no means of preventing, as he could not supply grease where and when needed.
As so aptly put by the late Judge Talia-ferro, of this court, in Roby Motors Co. v. Harrison, 19 La.App. 659, 139 So. 686, 688, and which appears apropos in this instance:
“It goes without saying that when a person purchases an automobile he primarily wants a vehicle that will meet his needs for it. A car that will not run, or one which runs intermittently, requiring the attention of a mechanic frequently to keep it going, is an abomination to the owner. In the present case the use of the car was so ‘inconvenient and imperfect’ that it could not be supposed that defendant would have purchased it, had he known of its defects or vices.”
See, also: Reech v. Coco, 223 La. 346, 65 So.2d 790; Falk v. Luke Motor Company, Inc., 237 La. 982, 112 So.2d 683; Combs v. International Harvester Company, La.App.2d Cir., 1959, 115 So.2d 641.
Defendant’s purchase of the car was for his family use, for the wife in making errands for herself and for the family, and for transportation of the family to church and the children to school.
On the occasion of the last failure of the car while in defendant’s possession, the vendor was notified of its location at a filling station, from which it took possession.
*37 The record makes it clear that within a short period of time after his purchase, defendant experienced insurmountable difficulties in the operation of the car. It would not start, or would start only with considerable trouble; the battery had to be replaced; a front wheel was involved in a breakdown, as was finally the drive shaft and universal joint. The latter was caused by an obvious defect in the design or manufacture of the parts involved, a recurrence of which was shown to be likely and which which could not be prevented. No other conclusion could be reached than that, had the defendant known of the vices and defects in the car, he would not have purchased it. We are fully convinced that the use of this car was so inconvenient and imperfect as to justify a rescission of the sale.
We therefore find no error in the judgment appealed and it is, accordingly, affirmed at the cost of the third-party defendant-appellant.
Affirmed.