### No. 11,478.

### EDWARDS & KURZ VS. PLAQUEMINE ICE AND COLD STORAGE COMPANY.

*The purchaser sued for the price is entitled, notwithstanding the prescription of the action* quanti minores, *to claim a reduction of the price for defects in the thing sold. Civil Code, Arts. 2541, 2544; 1 N. S. 468; 2 An. 546.*

Edwards & Kurz vs. Cold Storage Company.

When a machine stipulated to be furnished is delivered to the party bound to receive and pay for it, who, after a fair opportunity for examination and trial of the machine, promises payment of the price with conditions afterward waived by him, in the suit brought to compel that payment, the burden of proof will be on the defendant to prove the defects in the machine alleged to exist.

APPEAL from the Fourteenth District Court, Parish of Iberville. Talbot, J.

*J. Armstrong* and *D. H. Cross* for Edwards & Kurz, Assignees; *Frank McGloin* Attorney for Moore & Knight, Appellees:

The evidence shows full compliance with the contract.

Defendant can not claim more than specified in resolution of May 21, 1891, which was carried out.

Defendant having operated plant for eighteen months, burden of proof is upon it to show defective character of machinery and fair usage in its hands. 40 An. 112 Whitney Iron Works vs. Reuss.

Defendant having accepted partial delivery can not subsequently complain that the goods were not in conformity with contract. 38 An. 773, Enders vs. Gingres.

A party accepting work done and expressing satisfaction is estopped from claiming damages for violation of contract. 36 An. 320, DeLambre vs. Williams; 38 An. 573, Shakespeare vs. Ware.

Residents of the parish of Orleans can not be cited in reconvention in the parish of Iberville in a suit brought by their assignees in the court of the latter parish. C. P. 162; 24 An. 513; 23 An. 255; 21 An. 258; 21 An. 550.

The demand in redhibition, or for reduction or restoration of price, is prescribed by one year. C. C. 2534, 2544.

A demand in reconvention is not an exception within the meaning of the maxim " *Quæ temporalia sunt*," etc. 2 An. 546; 3 An. 141; 12 An. 297; 13 An. 249.

*Kernan & Laycock* and *Alex. Hebert* Attorneys for Defendants, Appellants:

A suspensive condition in a contract suspends the right of action until the event happens, or the thing to be performed takes place. C. C. 2023, 2038; 15 An. 647.

Where there is fraud on the part of the vendor, or obligor, the action *quanti minoris* or the redhibitory action is not prescribed by one year. C. C., Art. 2512; 15 An. 297; C. C. 2544; 14 An. 401.

A vendee may avail himself of a deficiency in the quantity of the thing sold, though the action *quanti minoris* be prescribed. He may use as a shield what he no longer can employ as a weapon. 3 N. S. 695; 4 N. S. 500; 2 La. 386; 4 R. 155; 9 R. 101; 1 An. 404; 6 An. 29; 12 An. 297; 17 An. 269; 18 An. 118; 20 An. 407; 14 An. 184.

In an exception of no cause of action the averment of the reconventional demand was taken as true. 14 La. 421; 12 An. 190; 13 An. 138, 177, 205; 14 An. 137.

The opinion of the court was delivered by

MILLER, J. The plaintiffs, as assignees of John S. Moore and C. W. Knight, brought suit in the lower court to recover the balance claimed to be due by the defendant company on a contract of Moore & Knight to deliver and erect an ice manufacturing machine with all fittings and appurtenances. The defendant excepted that by the terms of the contract no suit could be brought until the manufacture of ice had commenced, and it was proven that the machine could manufacture ten tons of ice daily, the exception insisting the machine had never demonstrated this capacity. The defendant answered, denying that the assignors of plaintiffs had fulfilled their contract, averring that the machine furnished was defective, not adapted to the purpose, nor according to the contract, that by reason of these defects defendants were entitled to four thousand seven hundred and ten dollars, for which defendants claimed judgment in reconvention against the assignors residents of New Orleans. The assignors pleaded their domicile to the reconventional demand against them in the 14th Judicial District Court of Iberville. The exception was sustained, and from that judgment there is no appeal. This eliminates the reconventional demand from consideration. The judgment of the lower court was in favor of plaintiffs and defendants appeal.

The defendants' contention is well founded, that the plaintiffs, as assignees of Moore & Knight, are subject to all defences against the assignors. Nor are the defences of defendants precluded by the prescription pleaded by plaintiffs of one year applicable to the action *quanti minores*, for the purchaser sued for the price may always claim a reduction for defects in the thing sold. Civil Code, Arts. 2541, 2544; Thompson vs. Melbourne, 1 N. S. 468; Girod vs. Creditors, 2 An. 546.

The appeal submits the issue of fact: whether the ice machine was delivered and erected by Moore & Knight in accordance with their contract. The answer and the testimony of defendants undertakes to maintain that the ice machine in all its parts was defective and unfitted for the purpose of the contract. The boiler, it is contended, was not of the capacity — *i. e.*, 50 horse-power stipulated, and it is charged that the generator, absorber, ammonia well, condenser, exchanger, valves and other appurtenances were each and all defective. The witnesses for the defence are the engineer of the de-

fendant, and an expert who never saw the machine in operation and testifies some months after its erection. These witnesses insist that there is but one test to determine the capacity of a boiler, and that test is against this boiler. On this point the testimony is at variance with that of four witnesses of plaintiff, three of whom are connected with foundries in this city. The conclusion from their testimony is, that the measurements of the different parts of a boiler are generally accepted as indicating the capacity of the boiler. There is also produced the catalogues, as they are called, of five leading manufacturers or dealers in boilers. It appears that the dimensions of boilers given in these catalogues as those of 50 horse-power conform to that furnished under the contract. Again, it appears the boiler was bought from the Nagle Company for $1172, 1 per cent. off. The expert of defendants testifies the boiler was diminished in value to the extent of $1000. This would make the boiler worthless. If this expert testimony is accepted, then the Nagle Company received and Moore & Knight paid over $1100 for a comparatively worthless boiler. It seems to us that defendants' testimony on this branch of the case proves too much, and that of defendants must prevail. As to the generator, absorber, valves and other appurtenances, in all of which defendants' testimony points out serious defects, there is opposed to defendants' witnesses the testimony of those who constructed for the contractor these portions of the machine. The plaintiff's witnesses testify that these parts of the machine were of the best material and workmanship. This testimony, based on personal knowledge and from disinterested persons, is entitled to great weight and outweighs, in our opinion, that of defendants' engineer and of the expert, who mingles with his testimony statements which appear to be based on information given to him. We think on this branch of the case the defence fails. As to the actual workings of the machine, the engineer testifies it failed to turn out the required quantity of ice. On the other hand, the testimony of one of the contractors who operated the machine for about sixty days after it was erected, is that its capacity to manufacture the quantity stipulated was fully demonstrated. He testifies there were some defects developed incident to new machinery and of no importance. Besides the engineer, defendants called an assistant connected with the working of the machine. He points out but one defect, and that of a trifling character. In this condition of

the record it can not be said that defendants have supported their case as to the actual working of the machinery. But it was arranged between defendants and the contractors there should be a test of the machine, and to this effect there was a resolution of the company, if not written by one of the contractors, was at least fully assented to by him and must be accepted as manifesting his entire confidence in the result of the test. There was some delay after this resolution was passed, but the defendant was not pressing for the test, and finally the contractors sent up a person to make it. On his application the company answered the machine was not working, and on this account the test proffered to the company was declined; nor does it appear the test was ever afterward sought or denied by defendant. Thus matters remained until the works were destroyed by fire. Payment being refused, this suit was brought for the balance due on the contract.

The rule so often applied in this class of cases, that acceptance of the work of the contractor binds the owner, or at least creates a presumption in favor of the contractor, is reasonable. This machine was erected and put in operation early in April, 1891. On May 21, 1891, the company adopted the resolution to the effect that if certain enumerated articles were furnished by the contractors and the test made of the machine that the company would pay. This was certainly a qualified acceptance of the machine. The articles then required to supply alleged defects, it is proved, were of value little over $100. It is utterly impossible, in our opinion, to reconcile this qualified acceptance with the existence of the serious defects to which the defendants' engineer and expert undertake, months after, to testify. If any such defects existed, as that testimony undertakes to support—*i. e.*, a worthless boiler and appurtenances, grossly defective in workmanship and material, the machine would, in our opinion, have been rejected and payments utterly refused. Instead payments on account were made, and the work accepted with the qualifications only specified in the resolutions of the company. The significance of this action against the company is made more impressive. The contractors sent up a portion of the articles specified in the resolution. These articles were never removed from the warehouse, and the company avowed it would not have received the residue of the articles called for by their resolution. As to the test proffered by the contractors, that was in effect refused. Weight is

due to the judgment of the lower court in a case like this. It was in favor of plaintiff, and we think the record shows no basis to reverse it.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed at the costs of appellant.