### No. 523, and on Rehearing No. 626

### First Circuit

### RAPIDES GROCERY CO. v. CLOPTON

(December 30, 1929. Opinion and Decree.)
(March 5, 1930. Rehearing Granted.)
(June 30, 1930. Opinion and Decree on Rehearing.)
(October 7, 1930. Writs Granted by Supreme Court.)
(December 1, 1930. Judgment of Court of Appeal Reversed by Supreme Court.)

Hawthorne & Stafford & Pitts, of Alexandria, and George K. Perrault, of Opelousas, attorneys for plaintiff, appellee.

John W. Lewis, of Opelousas, attorney for defendant, appellant.

ELLIOTT, J. Rapides Grocery Company, Inc., claims of B. W. Clopton $208 as the balance due on a goods and merchandise account sold and delivered to him between March 13th and the 1st day of April, 1926. The sworn account sued on annexed to the petition shows that the sales consisted of cotton seed; 20 sacks of which were sold on March 13, 1926, in amount $150, and 40 sacks on April 1, 1926, in amount $300. Interest charged on account to November 1st, $8. Total $458. Credit for $250 cash was given May 5, 1926, leaving a balance of $208. Defendant admitted buying the cotton seed from plaintiff at the time and prices alleged, but denies any present indebtedness.

He alleges by way of reconvention that during the early part of 1926 he ordered from plaintiff 40 bushels of soy beans at $4.50 per bushel, under warranty expressed and implied that they would be of good sound quality and would germinate and fructify under proper planting and cultivation.

That during the month of March he planted about 100 acres of the beans in ground

suitably prepared for the purpose. That he observed during the month of April that the beans were not coming up and had not come up at all. That he promptly notified plaintiff of such fact and kept him informed thereof. That he then experimented with the seed and ascertained that they were rotten when received and would not germinate. That plaintiff was notified of that fact and knew that said seed were fundamentally worthless at the time they were sold to him, and that they would not germinate or fructify. That defendant refused to pay for same on said account. That due to the bad quality of the seed, he lost the fertilization of his land and the fruit which the plants would have borne, and a further loss of 100 acres of beans which he estimated would have yielded 20 bushels to the acre, at $1 per bushel, $2,000, and 100 acres of hay which would have yielded six tons per acre, at $10 per ton, $6,000. Making an allowance for the expense of planting, cultivating, and harvesting, he estimated a net loss of $4,000 as a result of the inherently bad and rotten seed furnished him by the plaintiff. That he made payments on open account to the plaintiff before he discovered the unsound and rotten condition of said bean seed, because of his indebtedness for cotton seed, treating the account as a whole, but did not knowingly or advisedly make any payments whatever, specially on account of the said soy beans, after he discovered their worthless character.

He claims of the plaintiff in reconvention the sum of $4,000.

The plaintiff filed against defendant's demand in reconvention a plea of prescription of one year, and urges that it is good, whether the cause of action set up against it be regarded as an act, coming under the provisions of the Civil Code, art. 2315, or as a redhibitory action under the Civil Code, art. 2546, because more than two years had elapsed since defendant's discovery of the alleged vice. That moreover, the avoidance provided for by the Civil Code, arts. 1882, 2047, and Code of Practice, art. 20, is restricted to suits that have been brought to enforce that particular contract. That the object of the present suit is to recover the balance due for the cotton seed only. That there is no demand before the court for the price of the soy beans.

There is no demand on the part of the plaintiff for the price of the soy beans, yet it is established, as well by its witnesses as it is by the testimony of the defendant, that it sold and delivered to defendant 40 bushels of soy beans for seed purposes at the same time it sold him the cotton seed. The plaintiff however says, through Mr. Stafford, its manager, that its account sued on is the only one it had against defendant on March 13, 1926, at which time defendant remitted $250 on account. His testimony is as follows:

"Q. I notice here you have given credit to Mr. Clopton on May 5th, 1926 for $250.00. How much was due at the time, according to your books, by Mr. Clopton to your firm, at the time you received the remittance?
"A. $450.00.
"Q. Then, when you received this remittance from Mr. Clopton was there anything in the check or in the letter covering the remittance indicating to what particular purchase of Mr. Clopton this remittance should be credited?"

The witness, after referring to the letter from Mr. Clopton to the plaintiff, which accompanied the check, answered:

"A. I presume so; yes sir."

The evidence shows that two agents of plaintiff called together on defendant at his plantation, and he bought cotton seed from one of them and bean seed from the other;

Mr. Bogaerts being the one from whom he bought the bean seed. The order for both kinds of seed were given at the same time, but there were two shipments of cotton seed. The evidence indicates that the sale of the bean seed took place at the first sale of cotton seed. Mr. Bogaerts, speaking of a conversation with Mr. Clopton in regard to the beans, says:

"Q. Did you make any inquiry of Mr. Clopton as to when and in what manner he had planted the beans?

"A. I asked him and he told me, in March."

As the second shipment of cotton seed took place on April 1st, it is thus established with reasonable certainty that defendant bought the beans on March 13, 1926, that being the date of the first shipment of cotton seed. Mr. Bogaerts further said:

"Q. I wish you would give, in as near detail as possible, the conversation you had with Mr. Clopton at the time you sold him the seed.

"A. When I called on Mr. Clopton the primary object was to sell him cotton seed, and I found out that he had recently bought this plantation and that he was in the market for seed for practically the entire place; cotton seed, corn, peas, etc. And after selling him the cotton seed I naturally went over the lines that the house carried, in my department, mentioning all the seed that were listed and he bought cotton seed, corn and beans."

This statement also indicates that the sale of the bean seed took place on his first visit to defendant for the purpose of selling him seed.

Mr. Clopton, speaking of his purchase of seed from plaintiff and of his remittance of $250, says:

"Q. When you were placed upon the stand for the purpose of cross-examination you started to make a statement of the account you were questioned about and counsel stopped you, will you make that statement with regard to the soy beans?

"A. The soy beans did not show on his statement and I did not know why they should be left off. I bought all the seed at one time from the agent they had through here.

"Q. It was one account?

"A. Yes.

"Q. When you made the remittance of $250.00 did you send that as payment on the soy bean order, or did you send it intended as credit on the general account?

"A. Just as a credit on the general account. It would not offset any one item."

The letter which defendant wrote accompanying the check for $250 shows that he did not specify how it was to be applied. But as 40 bushels of beans at $4.50 per bushel amounts to $180, the remittance was more than the beans amounted to. Besides, the language of the letter was such that defendant cannot be considered as intending to pay anything on the beans. The plaintiff and defendant live in different parishes, and under the law, Code Practice, art. 375, the defendant may in such instances institute a demand against the plaintiff in reconvention for any cause although such demand be not necessarily connected with or incidental to the main cause of action. Defendant therefore had a right to bring a demand in reconvention against the plaintiff, as he has done, based on a sale of soy beans sold him for seed: the beans being worthless for such a purpose at the time of the sale, causing him damages as alleged in his demand in reconvention.

The fact that plaintiff did not see proper to charge defendant for the beans cannot deprive defendant of his right to recover the damages caused him as a result of the sale.

Defendant's demand in reconvention was not allowed in the lower court. It consti-

tutes the ground for controversy in this court.

The worthlessness of the beans for the purpose for which they were bought and sold is established. There is no foundation for plaintiff's veiled contention that defendant may not have properly prepared his ground, may have planted them too deep, or his soil may have been too wet, etc. The evidence shows that their failure to germinate and come up was due entirely to the badness of their quality at the time of the sale.

Plaintiff argues that it did not warrant that the bean seed would germinate, and that the demand in reconvention being due to such a failure, it is not liable on said account.

Mr. Clopton, testifying on this subject, says:

"Q. There was no sort of certificate of guarantee that came with the seed?
"A. No, except when I bought them I told them I wanted good seed. There was no certificate with the seed that I know of."

The Act No. 119 of 1914, sec. 1, and section 3 (amended by Act No. 180 of 1916) governed this sale. The beans were agricultural seeds within the meaning of the act. The title of the act says that it is "To regulate and control the sale of agricultural seeds; to provide for the test and examination of same; and to provide for the punishment for the violation thereof."

Soy bean seed are not expressly mentioned in the act, but they come within the scope of "forage plants" referred to in section 1 of the act, and also within the contemplation of section 3, which provides that a seller of seed must deliver a statement to the buyer showing approximately the percentage of germination, together with the date of the test. This requirement was not complied with by the plaintiff.

The Act No. 308 of 1926 did not go into effect until January 1, 1927.

Mr. Bogaerts, plaintiff's witness, testified that he did not warrant that these soy bean seeds would germinate; that seed houses do not warrant that the seed they sell will come up. It may be that such is the custom when selling garden seed in small packages and quantities, but when it comes to plantation owners like the defendant, buying large quantities of seed for the purpose of planting their plantations in fertilizer and forage crops, it is reasonable to expect the parties to make stipulations on the subject. The result of selling seed, worthless as such, when a hundred acres are to be planted, is no small matter. Such crops are highly valuable, and serious consequences follow a failure to make one. Such a farmer expects good seed and ordinarily will not be satisfied to take and pay for seed which requires work and expense to prepare the ground for and plant, when no assurance exists that the seed will germinate.

Supposing in this case that there was no express agreement on the subject of warranty; there was implied warranty, under the Civil Code, art. 2520, that the thing sold would be useful for the purpose for which it was bought.

Seed bought for the purpose of being planted, that will not come up, are of no value. No real consent to buy takes place because the seed, in such a case, are not an equivalent for the price. Civil Code, arts. 1824, 1896, 2439, 2464. A vice of that kind in soy beans is not discoverable by simple inspection, but it is the same in effect as if the beans had, unknown to the

32

parties, perished. In such case the plaintiff must bear the loss which resulted from the vice. Civil Code, art. 2532.

Plaintiff, arguing against recovery by defendant, claims that it called on him to return the unplanted seed for credit, and that it would have given him credit for their value had he done so. The record contains a letter from plaintiff to defendant dated October 18, 1926, in which it says:

"We would thank you to return us, the balance of the soy beans that you have on hand. Please see that the sacks have no holes in them, so that we will not have a claim with the railroad company. Upon the receipt of these soy beans we will issue credit memorandum for the value of the same."

In October, 1926, plaintiff wrote:

"We again request your attention in the matter of the returning of the unused portion of soy beans, as we are anxious to close out the balance of $208.00 which we note is outstanding on your account."

This was followed on November 1st by another letter in which plaintiff acknowledged receipt of a letter from defendant, in which he had informed them that hogs had gotten into the toolhouse and destroyed the seed. He suggested to defendant that the only way out of it then was for him to send his check for $208.

This $208 which the plaintiff refers to in its letter of October 26th and November 1st is the balance claimed in this case on account of the cotton seed. These letters indicate that plaintiff was permitting this balance to await an adjustment of defendant's expenses and losses resulting from the fact that the soy beans that had been planted had not come up.

Defendant testifies, and we think it true,

that the portion of the bean seed that had not been planted would have been returned to plaintiff soon after it was found that the portion planted would not germinate, had it not been that plaintiff was unwilling to receive them back. Defendant offered to return them, but plaintiff wanted to wait, so it claimed to him, until it could hear from the Snelson Seed Company of Athens, Ga., from which it had bought the seed.

Mr. Bogaerts says in his testimony that he learned from the Snelson Seed Company in May or June, 1926, that no adjustment from them could be expected, but no demand was made on defendant to return the unplanted seed until the 18th of October, and his offer then was to take back good beans. That those he saw in defendant's outhouse were not good beans, and his offer did not apply to them. Note Testy. p. 12; Transcript 59.

His position on this subject, as it appears from the note of testimony, is such that we are unable to form any conclusion as to whether he means that he offered to take back the unplanted bean seed or not. He estimated as a witness that bean seed would remain in a good state of germination for six months. He was not sure that they would not keep this long in a tight place in summer, but thought they would for that length of time in March and February.

Bogaerts also testified that he visited Mr. Clopton's plantation in May and looked at the bean seed. Mr. Clopton was absent at the time. That the seed was then stored in an outhouse, in bad condition, in a damp place, the door of the house open, and it looked like hogs had been in there. That the effect of leaving seed in such a place is that they will rot.

The defendant was examined on this sub-

ject, and we are satisfied that the facts are as stated by him. When the seed in question arrived at his plantation, he stored them in a seedhouse or gear room, a tight room about 12x14 used to keep seed in. He planted about half of the bean seed, and when they did not come up he left the remainder, for the time being, in the seedhouse. At the time Mr. Bogaerts was asked by defendant to go and look at the unplanted seed, and on which occasion he did not go, they were in this house awaiting some action on the part of the plaintiff as to their disposition. Later, it appearing that plaintiff was not intending to do anything, and the beans beginning to give out a bad odor, he moved them into another house called the toolhouse, in which they were at the time plaintiff's witness went to look at them. Defendant testifies that the beans were rotten and of no value at the time he moved them out of the seedhouse. It was after they had been moved into the toolhouse that the hogs found them.

According to defendant, the unplanted beans were rotten and had no value at the time they were moved out of the seedhouse in which they had been stored when first received. Defendant did not buy them for feed. It is not shown that they had any food value of importance at the time the hogs found them. If they had any, plaintiff lost it as a result of its delay and neglect in disposing of them, after having been informed that they had no value as seed.

Plaintiff contends that it did not know of the vice of the bean seed at the time of the sale. We are satisfied that such was the case.

Defendant's recovery is therefore limited by the law, Civil Code, art. 2531, to the return of the price and the reimbursement of the expenses occasioned by the sale. Defendant prepared his ground for the soy beans as is ordinarily done, and planted them. The sum thus expended for labor, seed, and time of teams and tools does not appear as precisely as it could have been shown, but enough appears to indicate that the expense of preparing the ground for and planting 100 acres is equal to $208.

For these reasons the judgment appealed from will be amended in regard to defendant's demand in reconvention.

There will be a judgment in favor of the plaintiff, Rapides Grocery Company, Inc., and against B. W. Clopton, defendant, for $208, as allowed in the lower court. And there will be at the same time judgment in favor of B. W. Clopton and against Rapides Grocery Company, Inc., on his demand in reconvention against the said plaintiff, for $208. And it is ordered that the said judgment in reconvention extinguish the judgment on the main demand.

As thus amended, the judgment appealed from is affirmed. The Rapides Grocery Company, Inc., appellee herein, to pay all costs in both courts.

## ON REHEARING

ELLIOTT, J. Rapides Grocery Company, Inc., plaintiff appellee, alleges in its petition for rehearing that our opinion and decree herein is contrary to the law and evidence and therefore erroneous in holding that the bean seed sold defendant was worthless as seed, and that the court did not pass on the question of prescription of one year which it had interposed against defendant's demand in reconvention, and that the placing of the cost in both courts on the plaintiff was not equitable.

The hearing was granted, and we have gone over the grounds of complaint.

As for the complaint that the bean seed was not worthless, we remain satisfied with our opinion and decree on that subject.

We are satisfied that the defendant was damaged as held as a result of having been sold bean seed that would not germinate. The evidence is not as precise as might have been as to the amount of defendant's loss on that account, but the amount fixed as due defendant on that account is not too much.

On the question of prescription, we are satisfied with our opinion and decree on that subject. The sale of the cotton seed was negotiated by one agent representing plaintiff, and that of the soy bean seed by another agent representing the plaintiff. The two came to defendant's residence together and worked together in selling plaintiff seed. One sold him the cotton seed; the other one immediately sold him the bean seed. The cotton seed and bean seed were sold to the defendant at the same time; the two objects constituting one obligation.

Defendant testifies that it was one account, and it seems to us that the two items should have appeared as such on plaintiff's account against the defendant. But plaintiff saw proper, after waiting more than a year, to bring suit for the cotton seed, and made no mention of the bean seed; yet plaintiff had received from the defendant a check for $250, which was more than the price that had been agreed on for the bean seed.

It seems to us to be a proper inference from plaintiff's action in the matter that it endeavors to leave the bean seed out of view, knowing that they were worthless as seed and that defendant was damaged as a result of the sale.

If plaintiff's procedure accomplishes the end which seems to be its object, then it will recover on account of the cotton seed and escape the consequences resulting from its sale of worthless bean seed.

In our law, an obligation is, in its general and most extensive sense, synonymous with duty, so we feel justified by the facts and circumstances in trying to enforce on the plaintiff what seems to us to be plaintiff's duty. The plaintiff cannot justly recover of defendant on account of the cotton seed without at the same time accounting to him for the consequences of having sold him worthless bean seed. It appears to us that defendant's demand in reconvention herein is necessarily connected with and incidental to the demand which the plaintiff has brought against the defendant. But, as plaintiff and defendant live in different parishes, such a connection and incident is not necessary; consequently, even if we were to take the position that the sale of the cotton seed and bean seed were not the same transaction, still the present suit is a proper time for defendant to claim an accounting from plaintiff as to the loss sustained because of the bean seed.

The provision made in the Code Practice, art. 20, is authority for holding that defendant's loss sustained on account of the bean seed may be brought forward to offset and extinguish plaintiff's demand on account of the cotton seed, although more than one year has passed since the sale in question.

In Thompson v. Milburn et al., 1 Mart. (N. S.) 468 (volumes 1 and 2 bound and paged together), the court said:

"The article of our code, which directs that the action of redhibition must be brought in one year at farthest from the date of the sale, can only receive an application in cases where the vendee is plaintiff, and brings an action. It leaves untouched the right to offer the want of con-

sideration as a defence against paying the price agreed on."

The facts in that case were different from that before the court, but the principle on which the case is based is that a party may urge defensively a right based on a cause of action, even though the action would be prescribed if the party urging it defensively had brought it forward as a ground of action in a suit brought by him on the same. Davenport's Heirs v. Fortier et al., 3 Mart. (N. S.) 695; Bushnell v. Brown's Heirs, 4 Mart. (N. S.) 499; Paxton v. Cobb, 2 La. 137; Nichols v. Hanse & Hepp, 2 La. 385; Girod v. His Creditors, 2 La. Ann. 546; Gillespie v. Cammack, 3 La. Ann. 248; Lafiton v. Doiron, 12 La. Ann. 165; Riddle v. Kreinbiehl, 12 La. Ann. 297; Davis v. Millaudon, 14 La. Ann. 868; Edwards & Kurz v. Cold Storage Co., 46 La. Ann. 360, 15 So. 61; Framton v. Nelson, 142 La. 850, 77 So. 767—are to the same effect.

In the case Girod v. His Creditors, 2 La. Ann. 546, the recovery was by way of a demand in reconvention, as in the present case. In the case Lafiton v. Doiron, 12 La. Ann. 297, the seller was not aware at the time of the sale of the bad quality of the thing sold.

In the present case we assume that the plaintiff was not aware at the time of the sale that the bean seed would not germinate.

The prescription of one year pleaded by the plaintiff against the defendant's demand in reconvention was in effect, although not expressly so stated, overruled in our first opinion and decree. We now expressly state that it was and is overruled.

As for the cost, we placed the payment on the plaintiff. It seemed to us that it was equitably done, due to the plaintiff's

action as indicated by the record. We are satisfied that it should remain as previously ordered.

Our previous opinion and decree herein being correct in every respect, is now reinstated as the opinion and decree of this court and made final.